**In re AUTO DEALERS SERVICES, INC., Debtor.**

**Bankruptcy No. 84–424–BKC–6P1.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Aug. 1, 1988.

Michael G. Williamson, Orlando, Fla., for debtor.

Ronald Harbert, Orlando, Fla., for Auto Dealers Group.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon motion filed by Auto Dealers Group ("Dealers") to Amend Plan, Bar Distribution and Require Countersigning of Checks. Upon consideration of the evidence, the Court makes the following findings of fact and conclusions of law:

### Findings of Fact

Auto Dealers Services, Inc. ("ADSI") filed under Chapter 11 of the Bankruptcy Code on May 21, 1984. At the time of filing, ADSI was a party to approximately 35,000 motor vehicle service agreements, which, in substantial part had been sold in the State of Florida by automobile dealers to purchasers of new and used automobiles.

During the pendency of the case, ADSI filed a motion to reject these service agreements as executory contracts pursuant to 11 U.S.C. § 365. By Order of March 4, 1985, the Court denied ADSI's motion "without prejudice as to the debtor rejecting the executory contracts as the Court may hereafter approve in connection with the Plan of Reorganization filed with the Court."

In its Plan of Reorganization, ADSI rejected all of its executory contracts not specifically assumed prior to the effective date of the Plan. This included the subject service agreements. The Plan of Reorganization specifically provides that in cases of holders of service agreements which have been rejected by the debtor, the amount of their claims will be calculated based upon an effective rejection date of May 21, 1984. The plan indicates that such claims shall be calculated based upon the percentage of the total amount paid for the service agreement represented by the amount of time remaining on the service agreement after May 21, 1984, as compared to the total

duration of the service agreement. From this amount will be deducted the amount of any claims actually paid by ADSI to such claimant. (Plan of Reorganization at Paragraph 15).

In addition to rejecting the service agreements, the Plan of Reorganization also provides that the debtor will establish an Available Funds Reserve Account into which the debtor will place funds derived from various sources. One such source is the outstanding unearned Dealer commissions resulting from the rejection of the service agreements as executory contracts as of May 21, 1984.

Debtor has unsuccessfully tried to collect the outstanding unearned commissions. A number of the dealers have denied liability. Consequently, ADSI has filed adversary proceedings against approximately 100 automobile dealers in the State of Florida seeking judgment. Approximately 34 of these dealers have formed an otherwise unaffiliated group which has filed various motions opposing the Debtor's Plan of Reorganization under the shorthand title of the Auto Dealers Group ("Dealers").

In regard to these Dealers, this Court has previously granted partial summary judgment on the issue of liability finding that the Dealers are liable under the theory of unjust enrichment as to their unearned commissions as of the date of the petition. *Auto Dealers Group v. Auto Dealer Services, Inc.*, 65 B.R. 681 (Bkrptcy.M.D.Fla. 1986). A trial to assess damages remains pending.

The Dealers have been active throughout this Chapter 11 case and opposed the confirmation of ADSI's Plan of Reorganization. By order entered June 4, 1985, the Court confirmed ADSI's Plan of Reorganization over these objections and concurrently therewith entered extensive findings of fact and conclusions of law. The Dealers filed motion for rehearing and reconsideration which was denied by Order dated August 16, 1985.

The Dealers are now before this Court on a Motion to Amend Plan, Bar Distribution, and Require Countersigning of Checks. This motion is in opposition to

ADSI's stated intent to commence distribution to unscheduled creditors which did not file a claim. These are the vast majority of holders of claims which arose on the effective date of the Plan from the debtor's rejection of its service agreement holders.

It is ADSI's position that the Plan does not contemplate that these some 35,000 individuals most of whose claims are in the $100–$300 range should follow the normal procedure which would require the scheduling of creditors or filing of claims. In support, ADSI points to paragraph 14 and 15 of its confirmed Plan which sets out the manner of calculation of these claims without requiring the filing of a claim. Those paragraphs provide:

14. A party to a rejected contract which has incurred damages as a result of such rejection shall have the opportunity to file a proof of claim with the Bankruptcy Court at any time prior to the earlier of 30 days after the effective date of the Plan or 30 days after an order by the Bankruptcy Court specifically authorizes the Debtor to reject such contracts.

15. In cases of holders of service agreements which have been rejected by the Debtor, the amount of the claim they will hold to be paid under Class IV, shall be calculated based upon an effective rejection date of May 21, 1984. Such claims shall be calculated based on the percentage of the total amount paid for the service agreement represented by the amount of time remaining on the service agreement after May 21, 1984 as compared to the total duration of the service agreement. From this amount shall be deducted the amount of any claim actually paid by ADSI to such Claimant.

The president of ADSI testified that service agreement holders were consistently advised by ADSI that the Plan controlled the method of payment and that they were not required to file a claim.

The Dealers counter that as a matter of law, ADSI is precluded from paying unscheduled creditors who did not file a claim.

*Conclusions of Law*

This Court finds that the Order Confirming Plan of Reorganization is binding upon ADSI, the claimants and the Dealers. The Dealers may not collaterally attack the prior order through a belated motion to amend a Plan of Reorganization. The Order Confirming the Plan of Reorganization, which has not been appealed by the Dealers, is the "law of the case" and is final. Parties should not be permitted to relitigate issues previously determined in a proper forum absent unusual circumstances not present here. *See Insurance Group Committee v. Denver & Rio Grande Western Railroad Co.,* 329 U.S. 607, 612, 67 S.Ct. 583, 585, 91 L.Ed. 547 (1947).

■ A Chapter 11 Plan of Reorganization is not binding on the debtor or any claimant prior to confirmation. However, once the Plan of Reorganization is confirmed, it is not only binding upon the debtor but all claimants dealt with thereunder. This is specifically provided for under § 1141(a) of the Bankruptcy Code:

Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

■ In the Memorandum Opinion entered June 4, 1985, the Court specifically found that the greater weight of the evidence showed compliance with § 1129(a). Furthermore, the Court now finds that the Plan does not require holders of claims arising from the rejection of service agreements to file claims. Although this provision may be in contravention of § 502 of the Bankruptcy Code, the Court is unwilling at this time to revoke the confirmation order, especially in light of the fact that movants are raising this issue for the first time some two years after confirmation.

Even if this argument were taking place in the context of confirmation, rather than two years thereafter, it is clear that faced with unusual circumstances, courts have the power to be flexible in dealing with the method under which plans will operate. This is an unusual Chapter 11 case involving a large number of relatively small claims. If the typical procedures were followed, and the claimants had been required to file proofs of claim, the amount of attorney's fees, not to mention court time expended in resolving these claims, would have been enormous. That fact alone could have rendered the Plan unfeasible.

Faced with these practical problems, the debtor sought a simple solution to a complicated situation. That is, not too dissimilar to the "claims resolution process" being employed in the *A.H. Robins Company, Inc.*, case. The debtor's plan greatly streamlines matters by setting up a method under which management of the debtor will process claims in the normal course of business and pay them pursuant to the simple calculations set forth in the Plan. *See In re A.H. Robins Company, Inc.*, 85 B.R. 373 (E.D.Va.1988). Interestingly, the Plan in the *A.H. Robins Company, Inc.* case even has provisions for claimants who did not comply with the procedures outlined and published by the debtor which would have required the filing of claims. A separate class has been established for these claimants who number in the many thousands.

In this case, ADSI has complete records of the dates and amounts paid by consumers for their service agreements. Thus, the debtor is in a position to process and make payments based upon its own records, without requiring claimants to actually file formal proofs of claim with the Court. Of course, claimants could choose to file claims which would be dealt with following the normal allowance and objection procedures outlined in the pertinent rules and Code sections.

The Court is also influenced by the fact that claimants may have been misled into not filing a formal claim by both the plain language of paragraph 14 and by the assurances of debtor's president. Nothing would be gained at this juncture by having the debtor reapprise the claimants of the necessity of filing claims.

The Court notes in passing that even if the Dealers could now argue confirmation issues, under these circumstances, the service agreement claims would still not be barred. That is, these claimants were well "known" to ADSI. As "known" creditors they are entitled to formal notice of the proceeding and any applicable claims bar date. The claimants did receive a copy of the plan and a notice of confirmation hearing. However, neither the Plan nor the Order Confirming the Plan set forth any bar date. As such, their claims have not nor could they be legally barred since notice of the bar date was never sent to the claimants. *See In re The Charter Company,* 68 B.R. 396 (Bkrptcy.M.D.Fla.1986).

It should be emphasized that only the "proponent of the Plan or a reorganized debtor" may modify a Plan after confirmation. 11 U.S.C. § 1127. The law does not permit parties in interest who are not proponents to modify a previously confirmed Plan.

Based upon the foregoing, this Court will enter a separate order denying the Dealers' Motion to Amend Plan, Bar Distribution and Require Countersigning of Checks.