**In re Michael BROWN, Debtor.**

**Bankruptcy No. 92–35070.**

United States Bankruptcy Court,
D. New Jersey.

Sept. 29, 1993.

Mary M. Theroux, Poss & Rotella, South Orange, NJ, for Gerald Poss.

Arthur Hilson, Spadoro & Hilson, Woodbridge, NJ, for Spadoro & Hilson.

Edward F. Christopher, Red Bank, NJ, for debtor.

Lainie L. Kernis, Jamieson, Moore, Peskin & Spicer, Princeton, NJ, for Midlantic Nat. Bank.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's opinion on motions by creditors Gerald Poss, Esq. ("Poss") and the law firm of Spadoro & Hilson ("S & H") to amend their proofs of claim. Poss originally filed a proof of claim as unsecured, and now wishes to assert an attorney's lien on a cause of action belonging to the estate. S & H originally filed a proof of claim as secured, based on a mortgage on certain real estate, and now wishes to assert an attorneys lien on the same cause of action as additional collateral. Both the debtor, Michael Brown, and Midlantic National Bank ("MNB"), a creditor in this case, have filed objections to the motions to amend, arguing that the changes that Poss and S & H seek are not amendments, but the untimely filing of new claims. The debtor and MNB argue further that Poss and S & H have failed to show that they should be allowed to file new claims pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1). For the reasons set forth below, both motions are granted.

This court has subject matter jurisdiction under 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

*Findings of Fact*

### A. *Motion filed by Gerald Poss*

On August 15, 1990, Michael Brown ("Brown" or the "debtor") and Gerald Poss entered into an Agreement To Provide Legal Services ("agreement").[1] The proof of claim that Poss seeks to amend in this case is for legal services performed under the agreement.

On August 10, 1992, Brown filed a petition under chapter 11 of title 11, United States Code ("Bankruptcy Code" or "Code"). A notice of the commencement of the case which set forth the deadline to file proofs of claim was mailed to all creditors on or about September 28, 1992. The deadline to file proofs of claim or "bar date" was January 20, 1993. Poss admits that he received a copy of that notice.

On December 3, 1992, Poss filed a proof of claim for $540,000 and characterized the claim as unsecured. On May 11, 1993, almost four months after the bar date, Poss sent a letter to the Clerk of the Bankruptcy Court, stating that he wished to amend his proof of claim to characterize it as secured, rather than unsecured. The letter indicated that copies of such letter were simultaneously sent to counsel for the debtor and several creditors. On June 3, 1993, Poss filed a motion to amend his proof of claim. In support of his motion, Poss filed a certification in which he stated, "[w]hen I filed the Proof of Claim, I considered my claim to be unsecured, and so designated it." Certification of Gerald Poss ("Poss Cert.") at ¶ 3. He then stated that "[s]ubsequent to the filing of my Proof of Claim herein, it has come to my attention that *N.J.S.A.* 2A:13–5 establishes a lien on my behalf against my recovery from the lawsuit of Michael Brown v. Ira Brown." Poss Cert. at ¶ 8.

On March 9, 1993, National Westminster Bank ("Nat West"), a creditor in this case, filed a disclosure statement and plan of reorganization. Since then Nat West has filed two amended disclosure statements and plans: a first amended disclosure statement and plan on May 24, 1993 and a second amended disclosure statement and plan on July 7, 1993. Under Nat West's second amended plan, the proceeds of the lawsuit of *Michael Brown v. Ira Brown* or any settlement thereof will be used to pay the creditors of the estate. Also, Nat West's second amended plan acknowledges that Poss has filed a motion to amend his claim and creates a separate class for his claim if it is amended and allowed as a secured claim.

On May 21, 1993, the debtor filed a disclosure statement and plan of reorganization. The debtor's plan does not rely on the proceeds from the litigation to pay the creditors' claims. To date no disclosure statement has been approved and no plan has been confirmed.

### B. *Motion filed by Spadoro & Hilson*

S & H provided legal services to Michael Brown until September, 1990 pursuant to a retainer agreement. These services included representation in two actions against Ira Brown, one in Bergen County and another in Middlesex County. S & H contends that the debtor owes it a total of $160,429.69 for its services.

On or about December 1, 1992, S & H filed a proof of claim in the amount of $160,429.69 and characterized it as secured by a mortgage on the debtor's commercial property in Colt's Neck, New Jersey. This property has been valued at $275,000.[2] Nat West has a senior lien on the property

---

**1.** The agreement states at ¶ 3B that Mr. Brown "agree[s] to pay a minimum of $100,000 for legal services regardless of the amount of time actually spent". The agreement states at ¶ 3C that Mr. Brown "reject[s] an hourly rate ... [and] agree[s] to pay Mr. Poss a contingent fee equal to 40% (Forty Percent) of any and all sums recovered by [Mr. Brown] from Ira Brown or any of the corporations listed [in the agreement] ..., whether by way of settlement or judgement, on or after this date." The agree-

ment states at ¶ 8 that "should [Mr. Brown] wish to terminate the services of the law firm, [he] may do so upon payment of the minimum $100,000 fee or the contingent fee earned or to be earned by the law firm on any settlement offer made to [Mr. Brown], whether or not [he] accept[s] it, whichever fee is the greater."

**2.** This value is based on an appraisal contained in the Nat West disclosure statement.

securing a claim in excess of $212,000. Therefore, if the appraisal is accurate and Nat West's claim is allowed in full, S & H's mortgage is undersecured by approximately $97,000.

On July 23, 1993, S & H filed a motion to amend a portion of its claim, in the amount of $116,591.58, plus interest, asserting for the first time that such claim is also secured by an attorney's statutory lien pursuant to *N.J.S.A.* 2A:13–5 on any recovery that the debtor may obtain in its action against Ira Brown in Bergen County. The debtor and MNB both filed objections to S & H's motion for the same reasons which they raised in opposition to Poss's motion.

*Conclusions of Law*

A. *Amendment of a Proof of Claim is Allowed Under Federal Rule of Bankruptcy Procedure 7015*

Federal Rule of Bankruptcy Procedure 7015 expressly adopts Federal Rule of Civil Procedure 15, which sets out the standards for allowing amendments to pleadings in adversary proceedings. Those standards also apply to amendments to a proof of claim. *In re AM International, Inc.*, 67 B.R. 79, 81 (N.D.Ill.1986). An amendment of a timely filed claim will relate back to the date the claim was originally filed if the amendment "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original" claim. Fed.R.Civ.P. 15(c)(2).

When a party wishes to amend its proof of claim after the bar date it must obtain the permission of the court to do so. *In re Wilson*, 136 B.R. 719, 721 n. 1 (Bankr.S.D.Ohio 1991). Whether to permit an amendment to a timely filed claim is within the discretion of the court. *Id.* at 721. (*citing In re McLean Industries, Inc.*, 121 B.R. 704, 708 (Bankr.S.D.N.Y.1990); *Associated Container Transportation (Australia) Ltd. v. Black & Geddes, Inc.*, (*In re Black & Geddes, Inc.*), 58 B.R. 547, 553 (S.D.N.Y.1983); *Futuronics Corp. v. Sycamore Industries, Inc.* (*In re Futuronics Corp.*), 23 B.R. 281, 283 (S.D.N.Y.1982)).

Permission to amend proofs of claim "shall be freely given when justice so requires." *Futuronics Corp.*, 23 B.R. at 283. This is because the purpose of Fed. R.Civ.P. 15 is to avoid the elevation of form over substance and "to facilitate the amendment of pleadings except where prejudice to the opposing party would result." *United States v. Hougham*, 364 U.S. 310, 316, 81 S.Ct. 13, 17, 5 L.Ed.2d 8 (1960), *reh'g denied* 364 U.S. 938, 81 S.Ct. 376, 5 L.Ed.2d 372 (1961). *See also In re International Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir.1985) (stating that "amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim"). Amendments after the bar date, however, must be scrutinized carefully to ensure that they are truly amending the timely filed claim and not asserting a new claim. *In re AM Intern., Inc.*, 67 B.R. at 81.

Courts generally apply two tests to determine whether to allow an amendment to a proof of claim. The first test is based on the language in Fed.R.Civ.P. 15(c)(2) and focuses on "whether there was timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *In re Black & Geddes*, 58 B.R. at 553. This test is a blend of the two concerns in Rule 15: 1) that the amendment arose out of the same transaction or occurrence and 2) that the opposing party would have reasonably anticipated that the claim might be amended. *See In re Miss Glamour Coat Co.*, 80 U.S. Tax Cas. (CCH) ¶ 9737, 1980 WL 1668 (S.D.N.Y.1980) (finding that the approach that best reflects the "liberal policy of Rule 15(c)" is to determine whether the claim arose out of the same transaction and whether other parties could have expected that the character of the original pleading might be altered).

Poss's proposed amendment of his claim will not pass muster under this test because a secured claim is materially different from an unsecured claim. *See In re Walls & All, Inc.*, 127 B.R. 115, 118

(W.D.Pa.1991) (holding that amending a claim from unsecured to priority status changes the nature of the claim). Section 506(a) of the Code sets forth the standards for determining whether a claim is secured or unsecured and makes it clear that when the claim of a creditor is only partially secured the creditor has two separate claims—one secured and one unsecured.[3] It would be one thing for Poss to amend his papers to plead other grounds for recovery that he might have overlooked earlier, but the changing of the status of a claim goes beyond introducing a new theory of recovery. This is more than a mere amendment of his original unsecured claim because that claim by definition can not include a secured claim, as the two are separate claims. *Id.* Moreover, Poss's unsecured proof of claim did not provide the debtor or creditors with any notice or indication that he would later file a secured claim. In fact, Poss in essence has conceded that he did not have an intention to file a secured claim until after the bar date, because he was not aware of the legal theory under which he could have asserted a secured claim.

For the same reasons, S & H's proposed amendment also fails under this initial test, as S & H is not just adding a new theory of recovery, but is attempting to change the status of its unsecured claim. Pursuant to Code § 506(a), S & H has a secured claim to the extent that its lien on the debtor's property has value, and an unsecured claim to the extent that the value of the S & H's lien is less than the amount of its claim. Here, S & H filed a claim in the amount of $160,429.69, but because the real property on which it has a lien is only valued at approximately $275,000 and there is a senior lien of approximately $212,000 on the property, S & H has a secured claim of approximately $63,000 and an unsecured claim of approximately $97,000. By amending its claim to assert a lien in the amount of $116,000 on another asset, S & H is changing the character of the unsecured portion of its claim to a secured claim.

Where the proposed amendment is more than just a correction of an error or involves something beyond the original claim, courts will generally apply an equitable test to determine whether to allow the amendment anyway.[4] *In re Garner*, 113 B.R. 352, 356 (Bankr.N.D.Ohio 1990); *In re Unroe*, 937 F.2d 346, 349 (7th Cir.1991). Authority for this equitable test is based on the broad equitable powers of the bankruptcy court. *In re Unroe*, 937 F.2d at 349. Courts generally consider the following questions under this test:

(1) whether the debtors and creditors relied on the earlier proofs of claim or had reason to know that subsequent proofs of claim would be filed;

(2) whether other creditors would receive a windfall if the court refused to allow the amendment;

---

**3.** Section 506(a) of the Code, in relevant part, states:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

11 U.S.C. § 506(a).

**4.** Few courts end their analysis after the first test even if they find that the proposed amendment is in reality a new claim. Most courts simply merge the two tests together. *In re Black & Geddes*, 58 B.R. at 553. Other courts state that they will consider whether the amendment should be allowed for equitable reasons, regardless of whether the amendment is actually closer to a new claim. *In re Garner*, 113 B.R. at

356. This court will follow the latter cases for two reasons. First, the court agrees that such a course is within its broad equitable powers. *See In re Unroe*, 937 F.2d 346, 349 (7th Cir.1991) (holding that Rule 7015 is not the only authority for allowing an amendment, but the court may also do so under it's "broad equitable jurisdiction"). Second, the equitable analysis applied in cases decided under Rule 7015 is essentially the same analysis that the Supreme Court used to determine what is "excusable neglect" under Rule 9006(b)(1) for allowing the filing of an untimely claim. *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). As such, the court is undertaking essentially the same analysis at this stage that it will have to use to determine whether to allow the late filing of a new claim.

(3) whether the creditor intentionally or negligently delayed in filing the proof of claim;

(4) the justification for the failure of the creditor to seek an extension of the bar date; and

(5) whether equity requires consideration of other facts and circumstances.

*In re Candy Braz, Inc.*, 98 B.R. 375, 381 (Bankr.N.D.Ill.1988) (*citing In re Miss Glamour Coat Co.*, 80 U.S. Tax Cas. (CCH) ¶ 9737, 1980 WL 1668 (S.D.N.Y.1980)). The five *Glamour Coat* questions ultimately focus on prejudice, delay and bad faith. *In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 36 n. 5 (Bankr.E.D.Pa.1988).

▆▆▆ In reviewing these equitable concerns, this court places greatest weight on whether any prejudice would result to other parties from allowing the amendments. While the other parties may not have had any indication that Poss or S & H would later amend their claims to secured status, no evidence has been offered that anyone relied to their detriment upon the claims as originally filed. The court agrees with the definition of prejudice provided in *In re Lanman*, 24 B.R. 741, 743 (Bankr. N.D.Ill.1982), which is that there is no prejudice "when all the parties can be placed in the same situation that they would have been in if the error had not occurred."[5] *Id.* (*quoting In re Myers*, 99 F. 691 (D.Ind. 1900)). In *In re Lanman* the court did not allow an amendment of a claim from general unsecured to priority status because another creditor had settled a substantial claim in reliance on the fact that the claim at issue was filed as a general unsecured claim. *In re Lanman*, 24 B.R. at 743. *See also In re First Truck Lines, Inc.*, 141 B.R. 621, 630 (Bankr.S.D.Ohio 1992) (holding that a reduction in the dividend paid to other creditors was by itself insufficient prejudice); *In re Hanscom Retail Foods,*

*Inc.*, 96 B.R. at 36 n. 6 (finding that no prejudice arose from the fact that the amended claim might be allowed and would therefore lower the distribution to other creditors); *Unioil v. H.E. Elledge, (In re Unioil, Inc.)* 962 F.2d 988, 993 (10th Cir. 1992) (requiring a demonstration of actual prejudice resulting from the amendment where the amendment was to correct a technical defect). In this case, both MNB and the debtor argue that prejudice would result from allowing the motions to amend because the distribution to the creditors holding general unsecured claims would be reduced. As stated above, however, the fact that Poss or S & H might prevail on their amended claims and thereby reduce the distribution to other creditors does not in itself constitute prejudice. Prejudice would result if the fact that the claims were originally filed as unsecured (or secured by only a lien on real estate) had somehow caused the other parties to change their positions to their detriment.

▆▆▆ Another type of prejudice that courts can consider when weighing the equities is prejudice to judicial administration. *In re Black & Geddes*, 58 B.R. 547, 553 (S.D.N.Y.1983). The claims filing procedure with its bar date is designed to enable the trustee to ascertain the extent of the claims against the estate. "In approving claims and distributions, trustees and judges should not feel hindered by nagging suspicions that latent claims could materialize at any time prior to a final pro rata distribution...." *Id.* Certainty and finality are legitimate goals of the bankruptcy court and the trustee. *Id.* While this court agrees that prejudice to judicial administration is a serious consideration, in this case the prejudice, if any, is not great. The delay here is not extreme and the case is not at such an advanced stage that this amendment will materially delay reorgani-

**5.** This court does not agree with those courts that have found that any resulting reduction in the distribution to other creditors or increase in litigation because of allowance of the amendment constitutes prejudice *per se. See, e.g., In re Walls & All, Inc.*, 127 B.R. 115, 118 (W.D.Pa. 1991) (holding that permitting claimant's amendment would prejudice other parties be-

cause it would reduce the distribution of funds and the trustee would incur additional expenses in objecting to the amended claim); *In re Metro Transp. Co.*, 117 B.R. 143, 150 (Bankr.E.D.Pa. 1990) (finding that allowing the amendment would prejudice the other creditors because they would "receive less than they reasonably contemplated under the Plan").

zation. *Cf. In re Garner*, 113 B.R. 352, 357 (Bankr.N.D.Ohio 1990) (disallowing an amendment where the plan had already been confirmed and distributions had been made for over thirteen months). Poss moved to amend his claim approximately four months after the bar date, approximately three months after Nat West filed its plan and about one week after the debtor filed its plan.[6] Moreover, to date no disclosure statement has been approved and no plan has been confirmed. In fact, Nat West's second amended disclosure statement and plan already provide for the possibility that Poss may have a secured claim against the estate.

S & H was more dilatory than Poss. S & H filed its motion to amend six months after the bar date and several months after both disclosure statements and plans were filed. However, as just stated, this case has not advanced to the point where significant delay will result if these motions are granted. S & H's new secured claim can simply be added to the existing disclosure statements and plans.

 Finally, the fact that allowing this amendment may increase the litigation costs of the estate is not the type of prejudice that will overcome the liberal policy towards allowing amendments under Fed. R.Civ.P. 15. *See Integrated Resources, Inc. v. Ameritrust Co. Natl. Assoc.*, (*In re Integrated Resources, Inc.*) 157 B.R. 66, 72–73 (S.D.N.Y.1993) (holding that an increase in administration and litigation costs alone is not the type of prejudice that can overcome the policy favoring allowance of amendments); *In re McLean Industries, Inc.*, 121 B.R. 704, 710 (Bankr.S.D.N.Y. 1990) (same); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979) (holding that several months of added discovery work was insufficient prej-

udice to deny leave to amend where the trial had not yet started).

Weighing against allowance of the amendments is the fact that the delay was solely due to the movants' own neglect. Moreover, no events occurred after the bar date to cause either Poss or S & H to file their motions to amend other than their own tardy discovery of a new theory to argue that they had a secured claim. Their inaction, however, was not based on bad faith. In sum, putting the greatest weight on the fact that there will not be any undue prejudice to either the other parties or to judicial administration, the equities weigh in favor of allowing the amendments.

**B. Enlargement of Time to File a Late Claim Under Rule 9006(b)(1)**

 If the court had denied the motions to amend the proofs of claim, it would still have to consider such motions under the standards for filing a late claim pursuant to Rule 9006(b)(1).[7] Rule 9006(b)(1) allows a court to permit late filings where the failure to file was the result of excusable neglect. In *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the United States Supreme Court discussed at length what constitutes "excusable neglect" under Rule 9006(b)(1). First, the Court considered the meaning of the term "neglect" and determined that the term's natural meaning, which "encompasses both simple, faultless omissions to act and ... omissions caused by carelessness[,]" should be applied. *Id.* at ——, 113 S.Ct. at 1495. Clearly, Poss's failure to initially file proof of a secured claim was due to his own neglect. The same is true of S & H's failure to initially assert an attorney's lien to secure his claim.

 The more difficult issue here is whether their neglect was "excusable".

---

6. In fact, the debtor and several creditors had notice of Poss's intent to amend his claim upon receipt of his May 11, 1993 letter to the Clerk of the Bankruptcy Court. This was prior to the filing of the debtor's disclosure statement and plan of reorganization.

7. Rule 9006(b)(1) provides in relevant part that:

when an act is required or allowed to be done at or within a specified period ... the court for cause shown may at any time ... permit the act to be done where the failure to act was the result of excusable neglect.
Fed.R.Bankr.P. 9006(b)(1).

The Supreme Court in *Pioneer* concluded that the determination of what is "excusable" is "at bottom an equitable one" and endorsed a balancing of the following factors: "the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at ——, 113 S.Ct. at 1498. These factors focus on three issues: the conduct of the claimant; prejudice to the other parties; and the interests of efficient judicial administration. The claimant has the burden of proving the existence of "excusable neglect". *In re Nutri Bevco,* 117 B.R. 771, 784 (Bankr.S.D.N.Y.1990).

 Focusing first on the conduct of the claimants, it is clear that the delay was solely their own fault. There were no intervening events that created a necessity for amending the original proofs of claim or the filing of new proofs of claim. Moreover, there is no dispute that Poss and S & H both received timely notice of the bar date. There is no evidence, however, of bad faith—only the movants' inattention at the time they filed their original proofs of claim. Also, the delay here was not extreme. As discussed already, Poss filed his motion to amend his claim approximately four months after the bar date. S & H filed its motion to amend approximately six months after the bar date. The seriousness of a delay will depend upon the posture and the complexity of the case. This case is still in an early stage, as no disclosure statement has been approved or plan confirmed.

The next factor the court must weigh is whether there would be any prejudice to the debtor or the other creditors if the claims are allowed to be filed. The debtor and MNB both argue that the creditors holding general unsecured claims would be prejudiced because their recovery under a plan of reorganization would be reduced.[8] If reduction of the distribution to other creditors constitutes prejudice, without more, then all late claims would cause prejudice unless all claims in the case are to be paid in full, which rarely occurs. This court finds that the type of "prejudice" to other parties that would weigh against allowing the filing of a late claim is detrimental reliance on the initial proof of claim. *See Taylor v. Riley,* (*In re Maps Intern., Inc.*) 152 B.R. 989, 992 (Bankr.N.D.Okl. 1993) (finding no prejudice to the other parties because no party had changed its position in reliance on the movant's default). Because none of the parties have detrimentally relied on Poss's or S & H's original proofs of claim, allowing the late claims will not result in prejudice to them.

Finally, the court must look at the impact the late filing will have on the administration of justice for purposes of Rule 9006(b)(1). The court reiterates its analysis and conclusion on this point in connection with Rule 7015. *See Dix v. Johnson,* (*In re Dix*) 95 B.R. 134, 138 (9th Cir.BAP 1988) (finding no prejudice to judicial administration where the confirmed plan of reorganization took into account movant's claim and movant had filed its motion before the disclosure statement and plan of reorganization were approved); *In re Earth Rock, Inc.,* 153 B.R. 61, 63 (Bankr.D.Idaho 1993) (holding that no prejudice would result from filing the late claim because the disclosure statement acknowledged the claim and debtor's reorganization would not be delayed). *Cf. In re New York Trap Rock Corp.,* 153 B.R. 648, 652 (Bankr.S.D.N.Y. 1993) (holding that prejudice would result because a consensual plan of reorganization, which did not account for movant's

---

8. This court acknowledges that it does not seem fair to those creditors who have complied with the rules and filed their proofs of claim in a timely manner to have their distribution reduced by others who did not comply with the rules. That result is, however, the consequence of the holding in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court held that "excusable neglect" includes omissions that were within the control of the claimant or its attorney. The Court stated that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at ——, 113 S.Ct. at 1495.

claim, had already been filed). The court finds that the effect on judicial administration is minimal in this case.

Weighing the movants' own negligence and inattention, a lack of bad faith by either movant, the lack of prejudice to the other parties, and minimal prejudice to judicial administration and the debtor's reorganization, the court finds that Poss and S & H should be allowed to file their amended or new claims.

*Conclusion*

Poss and S & H have satisfied both equitable tests followed under Rules 7015 and 9006(b)(1) to support the filing of an amended claim or a new claim after the bar date. Thus, both Poss's motion and S & H's motion are granted. Their attorneys shall each submit an order consistent with this opinion within ten days on notice under D.N.J.Bankr.Ct.R. 4(d). The attorney for the debtor shall contact the court to reschedule the hearing on the two proposed disclosure statements.