## In re WRENN INSURANCE AGENCY OF MISSOURI, INC., Debtor.

Bankruptcy No. 92–40633–2–11.

United States Bankruptcy Court, W.D. Missouri.

March 7, 1995.

Michael Flanigan, for debtor.

Philip Rouse, for Liquidating Agent.

ORDER DENYING MOTION TO AMEND PROOF OF CLAIM FILED BY THE WRENN INSURANCE AGENCY, INC.

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the motion filed by The Wrenn Insurance Agency, Inc., d/b/a The Wrenn Insurance Group (Wrenn Agency) to amend its proof of claim and the objection thereto filed by Polsinelli, White, Vardeman & Shalton, P.C., (Polsinelli), bankruptcy counsel for the debtor The Wrenn Insurance Agency of Missouri, Inc., d/b/a John F. O'Reilly Agency (Wrenn of Missouri). For the following reasons, the Court denies the motion to amend.

## FACTS

Wrenn Agency is the sole shareholder of Wrenn of Missouri. On June 27, 1990, Oak Park Bank (Oak Park) loaned Wrenn of Missouri $500,000. Wrenn of Missouri executed a promissory note in favor of Oak Park for $500,000. To secure the loan, Wrenn of Missouri executed a security agreement granting Oak Park a security interest in "[a]ll present and future Accounts Receivable, proceeds arising therefrom, contract rights (not to include book of business), however evidenced or acquired, now owned, purchased with loan proceeds and hereafter acquired, and all additions and accessions thereto." Oak Park properly perfected its security interest pursuant to Mo.Rev.Stat. § 400.9–401(1)(c) (1994) by filing a UCC–1 with the Missouri secretary of state on July 26, 1990, and by filing a UCC–1 in the office of the recorder of Jackson County, Missouri on July 24, 1990. On June 27, 1990, Wrenn Agency executed a Continuing Contract of Guaranty in which it guaranteed payment of this $500,000 loan.

On February 21, 1992, Globe Indemnity Company (Globe) delivered a written notice to Wrenn of Missouri in which it stated that it was terminating its agency agreement. After learning of the termination of the agency agreement, on or about February 21, 1992, Oak Park setoff all of Wrenn of Missouri's bank accounts and the bank accounts of Wrenn Agency in satisfaction of the outstanding indebtedness owing by both companies to Oak Park. This included funds setoff from Wrenn Agency's bank accounts that were used to satisfy the $500,000 loan that Oak Park had made to Wrenn of Missouri which Wrenn Agency had guaranteed.

On February 26, 1992, Wrenn of Missouri filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Court ordered creditors to file proofs of claim by June 5, 1992. Wrenn Agency properly filed a notice of extension of time in which to file a claim against Wrenn of Missouri pursuant to Local Bankruptcy Rule 3.002, then subsequently filed its proof of claim on July 17, 1992. Wrenn Agency asserted an unsecured nonpriority claim in the amount of $696,196.94 based partly upon services performed and partly upon Oak Park's offset of an estimated amount of $437,669 from its bank accounts to satisfy the obligations of Wrenn of Missouri. Wrenn Agency stated that the calculations were only estimates and that it was reserving the right to amend its claim.

On July 20, 1992, Wrenn of Missouri filed its First Amended Disclosure Statement (Statement) and First Amended Plan of Liquidation (Plan). The Plan established eight classes of creditors to receive distributions under the Plan in the following priority: administrative expense claimants, employee wage claimants, employee benefit claimants, security deposit claimants, tax claimants, unsecured claims of creditors in an amount less than or equal to $500, unsecured claims of creditors in an amount over $500, and interest holders. The Plan made no provision for distribution to secured creditors. The Plan stated that:

The Confirmation Order shall constitute an injunction against the pursuit of any Claim or Interest except as otherwise provided in the Plan, and Holders of Claims and Interests shall be precluded from asserting against the Debtor or the Debtor's assets any Claim or Interest based upon any act or omission, transaction or other activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan.

Under the Plan, Wrenn Agency was treated as an unsecured creditor with a claim over $500. The Plan made no provision for the potential treatment of Wrenn Agency as a secured creditor at any time and specifically did not provide for a distribution to Wrenn Agency as a secured creditor based upon Oak Park's offset of funds from Wrenn Agency's bank accounts pursuant to the loan guaranty. In short, the Plan provided that Wrenn Agency would be treated only as an unsecured creditor and reserved no other rights to Wrenn Agency.

Wrenn Agency voted to accept the Plan. On October 2, 1992, the Court confirmed Wrenn of Missouri's Plan. Wrenn Agency attended the confirmation hearing and did not object to treatment of its claim as unsecured. Wrenn Agency did not appeal the confirmation order.

On March 17, 1994, the Court authorized Wrenn of Missouri to enter into a Mutual Settlement and Release Agreement (Settlement Agreement) with Globe, Oak Park, and Wrenn Agency, among others, to settle pending litigation between the parties. Paragraph 4.02 of the Settlement Agreement states:

Oak Park acknowledges that about $92,-000 in funds of Wrenn Agency were used to pay the Wrenn of Missouri Term Note owed by Wrenn of Missouri to Oak Park and guaranteed by Wrenn Agency. Oak Park agrees to execute the documents needed, if any, to allow Wrenn Agency to exercise its subrogation and other rights against the primary obligor of that note including any secured interests. Nothing in this Agreement releases or affects these rights of Wrenn Agency against the primary obligor of that note.

Paragraph 8.09 of the Settlement Agreement provides that "The Wrenns [R. Michael Wrenn and Norma Wrenn] and Wrenn Agen-

cy specifically reserve any and all claims and causes of action they may have against Wrenn of Missouri, including any claims they have as a creditor, shareholder, parent, employee or otherwise, and nothing in this Agreement shall prevent the Wrenns or Wrenn Agency from pursuing such claims." Apparently, the parties did execute the Settlement Agreement, but the exact date is unknown.

On January 10, 1995, Wrenn Agency filed a motion to amend its claim requesting that the Court allow it to reclassify $92,000 of the proof of claim that it filed on July 17, 1992, from an unsecured nonpriority claim to a secured priority claim. The proposed proof of claim further provides that the unsecured nonpriority claim would be reduced to $258,-627.94 for a total claim of $350,627.94.

In support of its motion, Wrenn Agency contends that the $437,669 figure in the original proof of claim was only an estimate of the funds used by Oak Park to satisfy the obligations of Wrenn of Missouri and that the $92,000 figure "can now be identified specifically and supported as a secured claim due to the provisions [of the Settlement Agreement]." Wrenn Agency argues that when Oak Park used its funds to pay Wrenn of Missouri's obligations pursuant to the guaranty it became subrogated to the collection rights of Oak Park, but that right of subrogation was not fully liquidated and determined until the Settlement Agreement was reached between the parties and approved by the Court in March of 1994. Wrenn Agency asserts that the Court has already approved the Settlement Agreement, which included the provision in which Oak Park acknowledged that it used about $92,000 of Wrenn Agency's funds to satisfy Wrenn of Missouri's obligations, therefore, the Court should readily approve the amended proof of claim and reclassify $92,000 as secured in accordance with the Settlement Agreement.

Polsinelli objects to Wrenn Agency's request to amend its proof of claim. As the holder of an allowed administrative expense claim, Polsinelli objects to the request if granting Wrenn Agency a secured claim would entitle it to priority in payment over Polsinelli's allowed administrative expense.

Polsinelli further requests that the Court require Wrenn Agency, an insider pursuant to 11 U.S.C. § 101(31), to provide strict proof of its alleged secured claim and also consider whether the insider claim should be subordinated under 11 U.S.C. § 510. Additionally, Polsinelli contends that Wrenn Agency's request for relief is barred by the doctrine of res judicata as the confirmed Plan is binding upon Wrenn Agency pursuant to 11 U.S.C. § 1141(a).

According to a report filed by Wrenn of Missouri's liquidating agent on December 30, 1994, the employee wage claims and the employee benefit claims have been paid in full. Approximately $47,460 in administrative expense claims remain to be paid. No distributions have been made to the tax claimants or to the small claims unsecured creditors. Tax claims in the approximate amount of $154,740 and unsecured small claims in the approximate amount of $4355 remain to be paid. No distributions have been made to the remaining class of unsecured claimants or to the interest holder.

At the hearing held on January 30, 1995, Wrenn Agency consented to the subordination of its secured claim to the claims of the administrative expense claimants if the Court allows it to amend its claim. Pursuant to the Court's instructions, after the hearing Wrenn Agency submitted supplemental exhibits which establish that Oak Park had a perfected security interest in collateral of Wrenn of Missouri that secured the $500,000 loan guaranteed by Wrenn Agency.

### DISCUSSION

The Court denies Wrenn Agency's motion to amend its proof of claim for three reasons. First, the terms of the confirmed Plan bind Wrenn Agency to distribution under the Plan as an unsecured nonpriority creditor. Second, the amendment improperly sets forth a new claim. Finally, the amendment would not be equitable under the circumstances of this case.

*Binding effect of the confirmation plan*

Section 1141(a) of the Bankruptcy Code states:

**796**

Except as provided in subsections (d)(2) and (d)(3) of this section [not applicable here], the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

■ "[A] confirmed plan is a contract." *In re Modern Steel Treating Co.*, 130 B.R. 60, 65 (Bankr.N.D.Ill.1991). Once a plan is confirmed, it is binding upon the debtor and all claimants dealt with thereunder. *In re Auto Dealers Serv., Inc.*, 89 B.R. 233, 235 (Bankr.M.D.Fla.1988). Upon confirmation, the debtor and all creditors are bound by a Chapter 11 plan. *In re White Farm Equip. Co.*, 38 B.R. 718, 724 (N.D.Ohio 1984). The plan and order of confirmation fixes the rights of the parties. *In re Astroglass Boat Co., Inc.*, 32 B.R. 538, 542 (Bankr.M.D.Tenn. 1983). " 'Once a plan is confirmed, neither a debtor nor a creditor may assert rights that are inconsistent with its provisions.' " *In re Prudential Lines, Inc.*, 170 B.R. 222, 242–43 (S.D.N.Y.1994) (quoting *In re Laing*, 146 B.R. 482, 484 (Bankr.N.D.Okla.1992)).

"Absent fraud, parties must be able to rely on the confirmed plan." *In re Nardulli & Sons Co., Inc.*, 66 B.R. 871, 881 (Bankr. W.D.Pa.1986).

A strong policy favors enforcement of the plan of reorganization because too many rights of too many interests have relied on the finality of the confirmation order.... Once the plan is confirmed, the property rights of many of these interests are adjusted thereby creating a new status which is important to preserve.

*In re Christopher*, 148 B.R. 832, 837 (Bankr. N.D.Tex.1992).

■ The confirmed plan is binding on a creditor and the creditor does not have the power unilaterally to change its treatment under the plan. *In re Omega Corp.*, 173 B.R. 830, 833 (Bankr.D.Conn.1994) (Internal Revenue Service may not generally assert post-

confirmation liens for prepetition claims that it filed as unsecured claims and which were treated as such by the confirmed plan.).

■ Here, Wrenn of Missouri's confirmed Plan provided that Wrenn Agency would be treated as an unsecured creditor. The Plan did not reserve any additional rights to Wrenn Agency. More specifically, the Plan did not provide that a portion of Wrenn Agency's claim would be treated as secured based upon its subrogation rights against Wrenn of Missouri. Wrenn Agency's rights were defined and limited by the Plan. *See Nardulli*, 66 B.R. at 874. Wrenn of Missouri's Plan expressly stated that creditors were bound by its provisions. Wrenn Agency cannot now attempt to elevate the status of a part of its claim.

■ Further, a confirmed plan has the effect of a final judgment issued by the district court. *In re Burner*, 109 B.R. 216, 225 (Bankr.W.D.Tex.1989). *See In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414, 419 (Bankr.S.D.Ohio 1993). A confirmed plan has *res judicata* effect. *United States v. Standard State Bank*, 91 B.R. 874, 879 (W.D.Mo.1988), *aff'd* 905 F.2d 185 (8th Cir. 1990).

"An order confirming a Chapter 11 plan from which there is no appeal is generally regarded as an order that is entitled to full faith and credit by other courts and is res judicata as to all questions pertaining to such plan which were raised or could have been raised."

*In re Horne*, 99 B.R. 132, 134 (Bankr. M.D.Ga.1989) (quoting *In re Sanders*, 81 B.R. 496, 498 (Bankr.W.D.Ark.1987)).

"Principles of claim preclusion bar relitigation of any issues raised or which could have been raised in the confirmation proceedings." *Outdoor Sports*, 161 B.R. at 419.

In *In re Alliance Operating Corp.*, 173 B.R. 326 (E.D.La.1994), a creditor that had filed only a general unsecured claim in the debtor's Chapter 11 bankruptcy applied for allowance and payment of its claim as an administrative expense priority and filed an amended proof of claim after expiration of the claims bar date. The district court af-

firmed the bankruptcy court's denial of the creditor's attempt to elevate the status of its claim after confirmation of the Chapter 11 plan by filing an amended proof of claim. In relevant part, the district court agreed with the bankruptcy court that the creditor was barred by *res judicata* from amending its claim after the court had confirmed the Chapter 11 plan. *Id.* at 330. The court found that the creditor did not object to or appeal from the treatment of its claim as unsecured, its amended claim involved exactly the same parties, and the debtor's plan expressly classified the claim as unsecured. *Id.* The district court opined that *"[r]es judicata* operates even when the plan mistakenly characterizes a claim." *Id.*

Here, Wrenn Agency did not object to the treatment of its claim as unsecured at the hearing on confirmation of the plan and did not appeal the confirmation order. Wrenn Agency had full opportunity to raise the issue that part of its claim should be classified as secured because of its subrogation rights against Wrenn of Missouri. That issue is one which could have been raised at or before confirmation. In *American Nursing Resources, Inc. v. Forrest T. Jones & Co., Inc.*, 812 S.W.2d 790, 794 (Mo.App.1991), the Missouri Court of Appeals described subrogation as:

> the substitution of another person in the place of the creditor, so that the person in whose favor subrogation is exercised succeeds to the right of the creditor in relation to the debt.... The right of subrogation accrues to a person who has paid the debt or obligation for which another is primarily responsible.

"It is the very nature of subrogation to substitute the person who pays the debt of another to all the rights and remedies of that other in relation to the debt." *Id.* at 798.

In *Gibson v. Harl*, 857 S.W.2d 260, 268 (Mo.App.1993), the Missouri Court of Appeals opined:

> [A] guarantor who pays the debt or judgment of another, "at least as against the debtor primarily liable, [is] subrogated to all the rights and remedies of the creditor, *and this even without formal assignment of the debt or judgment."* [emphasis add-

ed]. *Phelps v. Scott,* 325 Mo. 711, 30 S.W.2d 71, 75[5] (1930); *First State Bank v. Reorganized School Dist. R–3 Bunker,* 495 S.W.2d 471, 484–85[11, 12] (Mo.App. 1973).

The equity of subrogation attaches immediately and to the extent necessary to effect reimbursement to all rights, remedies and securities which were available to the creditor to obtain payment from the person or property of the one who, as to the guarantor, is primarily liable for the debt.... In equity, the plaintiffs Gibson as guarantors became owners of the collateral immediately, and by operation of law, upon payment of the debt of the principals [third-party defendants Gibson] to the extent necessary to obtain reimbursement.

■ In this case, when Oak Park applied funds from Wrenn Agency's bank accounts to satisfy the obligation of Wrenn of Missouri, the cause of action against Wrenn of Missouri passed from Oak Park to Wrenn Agency. *See Hume v. First Nat'l Bank of St. Joseph,* 689 S.W.2d 392, 394 (Mo.App.1985). Oak Park was a perfected secured creditor and Wrenn Agency stepped into the shoes of Oak Park when Oak Park obtained payment of Wrenn of Missouri's debt from Wrenn Agency on or about February 21, 1992. The portion of Wrenn Agency's claim against Wrenn of Missouri that was based upon its subrogation rights was secured. That information was available to Wrenn Agency prior to filing its proof of claim. The only issue was the exact amount of funds that Oak Park had used from Wrenn Agency's bank accounts to satisfy Wrenn of Missouri's indebtedness. Wrenn Agency's inability to know the exact amount of the secured claim when it filed its proof of claim does not excuse Wrenn Agency's failure to estimate the secured portion of its claim and allocate part of its claim as secured in the original proof of claim. "Bar dates do not ... 'fix in stone the final "allowed" amounts of claims.' ... '[B]ar dates establish the universe of participants in the debtor's case, they have little correlation to the final amounts in which creditors will share any distribution.'" *Outdoor Sports,* 161 B.R. at 419 (quoting *United States v. Kolstad (In re Kolstad),* 928 F.2d

171, 173–75 (5th Cir.1991)). When a confirmed plan does not specify the exact amount owed to a creditor, the plan does not bar the subsequent filing of an amended proof of claim for the purpose of calculating the final *amount* of the claim. *Outdoor Sports,* 161 B.R. at 420 (emphasis added).

■ In this case, all the elements of *res judicata* are satisfied. *See Alliance,* 173 B.R. at 330 n. 6. Wrenn Agency's amended claim involved exactly the same parties and the Plan expressly classified Wrenn Agency's claim as unsecured. Wrenn Agency is barred by *res judicata* from relitigating the status of its claim.

Previously, in *In re Basham,* 167 B.R. 903 (Bankr.W.D.Mo.1994), this Court determined that a secured creditor who did not object to the confirmation of a Chapter 13 plan which provided for the surrender of collateral to the secured creditor in full satisfaction of the debt precluded the secured creditor's post-foreclosure deficiency claim against the debtor. 11 U.S.C. § 1327(a) provides that a confirmed plan is binding upon the debtor and creditors. In *Basham* the issue before this Court was the *res judicata* effect of the debtor's confirmed Chapter 13 plan on the creditor's secured claim. *Basham,* 167 B.R. at 904.

This Court concluded that the appropriate inquiry to decide whether a creditor had sufficient notice of the Chapter 13 plan's treatment of its claim to be bound by the plan's terms is: 1) the sophistication of the creditor; 2) the creditor's amount of involvement in the bankruptcy proceedings; and 3) the creditor's reliance on the claims allowance procedures as demonstrated by a proof of claim filed before plan confirmation. *Id.* at 908.

Applying the *Basham* factors to the situation herein the Court finds that Wrenn Agency had sufficient notice of the Plan's treatment of its claim and must be bound by the Plan's terms. Wrenn Agency is a very sophisticated creditor who was in the middle of the bankruptcy proceedings. Wrenn Agency filed a proof of claim as an unsecured nonpriority creditor and the Plan treated it as such. The terms of the Plan were clear and Wrenn Agency was fully aware of its position in the distribution scheme. Wrenn Agency did not object to its treatment under the Plan and, in fact, voted to accept the Plan. Wrenn Agency cannot change its treatment under the Plan at this late date.

Finally, Wrenn Agency cannot attempt to modify the terms of the confirmed Plan to change the nature of its claim by relying on paragraphs 4.02 and 8.09 of the Settlement Agreement or by its reservation of right to amend its proof of claim. The confirmed plan is a contract between Wrenn of Missouri and its creditors, including Wrenn Agency. Pursuant to 11 U.S.C. § 1127(b) only Wrenn of Missouri may modify the Plan after confirmation. Wrenn of Missouri has made no attempt to modify its Plan. Wrenn Agency contends that the Settlement Agreement finally liquidated and determined the secured amount of its claim against Wrenn of Missouri. However, as previously discussed, Wrenn Agency's right of subrogation accrued prepetition when Oak Park applied its funds to pay Wrenn of Missouri's obligations. That right did not depend on execution of the Settlement Agreement.

In sum, Wrenn Agency is bound by the confirmation plan and cannot elevate a portion of its claim to secured priority status.

*The proposed amendment improperly sets forth a new claim*

"It is well settled that the decision to allow an amendment to a timely filed claim is within the sound discretion of the Court." *In re Fischer,* 109 B.R. 384, 387 (Bankr. E.D.Mo.1989), *aff'd* 131 B.R. 137 (E.D.Mo. 1990). "As a general rule, 'amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.'" *Id.* (quoting *In re International Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir.1985)). "'[T]he courts should be liberal in awarding amendments ... "at any stage in the proceedings as justice may require."'" *In re Donovan Wire & Iron Co.,* 822 F.2d 38, 39 (8th Cir.1987) (quoting *In re Faulkner,* 161 F. 900, 903 (8th Cir.1908)).

"The bankruptcy court must carefully scrutinize such amendments to insure that they do not amount to an attempt to file an entirely new claim after the time for filing claims has expired." *Alliance,* 173 B.R. at 329. "[A]n amendment to a proof of claim that changes the claim from an unsecured status to a priority status quite obviously sets forth a new claim." *Id. See also In re Walls & All, Inc.,* 127 B.R. 115, 118 (W.D.Pa. 1991) (A post-bar-date amendment to a proof of claim that changes the status of the claim from unsecured to sixth place priority changes the nature of the proof of claim and must be disallowed.). "[A] secured claim is materially different from an unsecured claim." *In re Brown,* 159 B.R. 710, 714 (Bankr.D.N.J.1993). Changing the status of a claim from unsecured to secured does more than merely amend an original unsecured claim "because that claim by definition can not include a secured claim, as the two are separate claims." *Id.* at 715.

Here, Wrenn Agency is attempting to elevate the status of a portion of its claim from unsecured to secured. This purported amendment sets forth an entirely new claim. Wrenn Agency cannot change the character of part of its unsecured claim to a secured claim. The proposed amendment is improper and must be disallowed.

*The amendment would not be equitable*

When determining whether a proposed amendment to a proof of claim would be equitable, important factors to be balanced by the court include: 1) undue prejudice to the opposing party; 2) bad faith or dilatory behavior on the part of the claimant; 3) whether other creditors would receive a windfall if the amendment is not allowed; 4) whether other claimants might be harmed or prejudiced by the amendment; and 5) the justification for the inability to file the amended claim at the time the original claim was filed. *In re McLean Indus., Inc.,* 121 B.R. 704, 708 (Bankr.S.D.N.Y.1990). *See Outdoor Sports,* 161 B.R. at 421; *Brown,* 159 B.R. at 715–16.

In this case, the first factor weighs in favor of allowing the amendment. Wrenn Agency has agreed to the subordination of its secured claim to the administrative expense claimants, therefore, Polsinelli, the party opposing the amendment, will not be prejudiced by the amendment.

The Court finds that the second factor weighs partly in Wrenn Agency's favor. The Court finds that Wrenn Agency has not engaged in bad faith in proposing the amendment, but Wrenn Agency has certainly been dilatory. Wrenn Agency knew prior to the claims bar date that it was subrogated to Oak Park's secured claim, yet it filed a proof of claim as an unsecured nonpriority creditor. The Court approved the Settlement Agreement in March of 1994, but Wrenn Agency waited until January of 1995 to assert that $92,000 of its unsecured nonpriority claim was secured. When Wrenn Agency filed its proof of claim on July 17, 1992, it never indicated that it was going to assert anything but an unsecured claim until the attempt to amend its proof of claim in January of 1995. Throughout the bankruptcy proceedings, no other creditor had any notice that Wrenn Agency would assert anything other than unsecured creditor status. Wrenn Agency has now unexpectedly blind-sided the other creditors by contending that its claim is partially secured. Court finds that Wrenn Agency has engaged in inequitable dilatory conduct.

The remaining three factors also weigh heavily against allowing the amendment. The Court finds that the other creditors will not receive a windfall if the amendment is not allowed. Wrenn of Missouri's other creditors will retain their promised priority in the distribution schedule under the Plan if the Court denies the amendment. Wrenn Agency voted to accept Wrenn of Missouri's Plan and knew its place in the distribution scheme. Wrenn Agency failed to argue prior to confirmation that a portion of its claim was entitled to secured priority status. In light of Wrenn Agency's failure to assert secured creditor treatment prior to confirmation, the Court cannot say that the other creditors would receive a windfall to which they are not entitled. *See In re Metro Transp. Co.,* 117 B.R. 143, 150 (Bankr.E.D.Pa.1990).

The Court finds that other claimants will be prejudiced if the amendment is allowed.

If the Court allows Wrenn Agency to reclassify a portion of its claim and elevate it to secured status, the tax claimants, small claims unsecured creditors, and the remaining general unsecured creditors will receive less than they reasonably contemplated under the Plan. *See Metro Transp.*, 117 B.R. at 150. The amendment will reduce the distribution of funds to these creditors. *See Walls & All*, 127 B.R. at 119. Wrenn Agency's original proof of claim provided no notice that a portion of its claim was secured, Wrenn Agency never argued prior to confirmation that part of its claim was secured, Wrenn Agency did not object to treatment as a general unsecured creditor under the Plan, Wrenn of Missouri's other creditors could not be expected to know that Wrenn Agency would contend post-confirmation that part of its claim was secured, and the other creditors have relied on the Plan as proposed and confirmed. Further, Wrenn Agency has failed to present any evidence to show that the other creditors will not be prejudiced by the proposed amendment to its claim. Under the circumstances of this case, the Court finds that the other creditors will be prejudiced by the resulting reduction in the distribution of the estate if the Court allows the amendment. The Court disagrees with those courts which conclude that a proposed post-confirmation amendment to a claim that elevates the status of the claim and reduces the distribution to the remaining creditors can never constitute prejudice to those other creditors in the absence of additional factors showing prejudice. *See Brown*, 159 B.R. at 716 and cases cited therein.

Finally, Wrenn Agency has failed to justify its inability to file the amended claim at the time the original claim was filed. As discussed above, Wrenn Agency's right of subrogation accrued prepetition when Oak Park used funds from its bank accounts to pay the obligations of Wrenn of Missouri pursuant to the guaranty. Oak Park was a perfected secured creditor and Wrenn Agency stepped into its shoes to pursue its subrogation rights. Wrenn Agency was fully aware prepetition and certainly prior to filing its original proof of claim that Oak Park had used its funds to satisfy Wrenn of Missouri's indebtedness. Wrenn Agency's subrogation rights did not depend on the execution of the Settlement Agreement in 1994, but arose at the time Oak Park used its funds in February of 1992. Even though part of Wrenn Agency's claim was secured, its proof of claim classified the entire debt as an unsecured nonpriority claim. The fact that the exact amount of the secured claim was unknown does not justify Wrenn Agency's failure to allocate a portion of its claim as secured in the original proof of claim. "[T]he amount set forth on the face sheet of the proof of claim may be a general amount and by no means does it 'fix in stone' the final allowed amount of the claim." *Outdoor Sports*, 161 B.R. at 422.

There is one final factor involved here that is not present in the usual case. The claimant, Wrenn Agency, has the same ultimate pocket (R. Michael Wrenn and Norman Wrenn) as the debtor, Wrenn of Missouri. While the corporate structures are separate and apart, nevertheless any enhanced distribution to Wrenn Agency will benefit the stockholders of the debtor, a result that certainly would end-run if not violate the absolute priority theory of reorganization encountered in cram down cases. For all these reasons the equities weigh against allowing the amendment. The Court must deny the proposed amendment on equitable grounds.

The Court denies Wrenn Agency's motion to amend its proof of claim. Wrenn Agency is bound by the terms of the confirmed Plan, Wrenn Agency's proposed amendment improperly sets forth a new claim, and under the circumstances of this case it would be inequitable to allow the amendment. Wrenn Agency states that the total amount of its claim is $350,627.94. The Court will allow Wrenn Agency's unsecured nonpriority claim in the amount of $350,627.94.

## CONCLUSION

Based on the above discussion, the motion filed by The Wrenn Insurance Agency, Inc., d/b/a The Wrenn Insurance Group to amend its proof of claim is DENIED. Wrenn Agency's unsecured nonpriority claim is ALLOWED in the amount of $350,627.94.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

SO ORDERED.