Thomas HOLSTEIN, Plaintiff–Appellant,

v.

Kevin BRILL, Defendant–Appellee.

No. 92–1670.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1993.

Decided Feb. 18, 1993.

Rehearing and Rehearing En Banc Denied March 16, 1993.

Thomas O. Holstein (argued), Chicago, IL, for plaintiff-appellant.

David A. Mucklow (argued), Norman B. Newman, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, IL, for defendant-appellee.

Before EASTERBROOK and RIPPLE, Circuit Judges, and MILLER, District Judge.[*]

EASTERBROOK, Circuit Judge.

Two bankruptcy lawyers have landed in bankruptcy themselves, owing each other money. Thomas Holstein owes Kevin Brill more than $11,000 as wages for services performed while Brill was his employee; Brill owes Holstein more than $7,000 in fees for cases referred after the employment ended.

On March 30, 1984, Holstein filed a petition under Chapter 13 of the Bankruptcy Code. Creditors had until August 2, 1984, to make claims. One day late, Brill filed a proof of claim for $11,475 in unpaid wages. On August 9 the bankruptcy court converted Holstein's case to Chapter 11 of the Code and set a new bar date of February 15, 1985. Brill did not file an additional or amended claim, although on August 30, 1984, Brill's employment with Holstein had ended, and the debt for wages should have been clear then or shortly thereafter. Everyone treated his earlier claim as timely—for Holstein's schedules had listed him as a creditor in roughly this amount—but the parties disputed its priority. Brill sought a high priority, while the trustee contended, and Bankruptcy Judge Hertz ultimately decided, that Brill was an "insider" whose debt belongs in the eighth priority. The trustee prepared, and Judge Hertz approved, a disclosure statement specifying that Brill was entitled to $11,318. On November 3, 1986, Judge Hertz confirmed Holstein's plan of reorganization. Brill did not object to the disclosure statement or the plan.

Come 1990 Brill, who had not been paid, asked Bankruptcy Judge Katz, to whom the case had been reassigned, to convert the reorganization to a Chapter 7 liquidation. Holstein opposed this, observing that he had paid more than $340,000 to his creditors and was about to begin paying the lowest-priority debts. After Holstein demanded that Brill fork over the more than $7,000 to which he was clinging, Brill replied on September 4, 1990, by increasing his own claim. Unpaid wages actually exceed $28,000, according to Brill's revised calculation. Judge Katz declined to convert the case to Chapter 7, refused to give Holstein any additional time to pay, ordered Brill to turn the $7,000 over to the estate, granted Brill's request to increase his claim to $28,000, and rejected Holstein's request to offset his accounts with Brill. 1991 WL 236871, 1991 Bankr. Lexis 1606. The district court affirmed. 1992 WL 55488, 1992 U.S.Dist. Lexis 2506. Bank-

* Hon. Robert L. Miller, Jr., of the Northern District of Indiana, sitting by designation.

ruptcy Judge Wedoff, presiding in Brill's separate bankruptcy (commenced in 1988 without notice to Holstein), has concluded that the $7,000 covered by Judge Katz's turnover order is not dischargeable.

■ Setoff is not available. Holstein owes Brill money for wages preceding August 30, 1984; Brill owes Holstein money for legal work done after Brill was in practice on his own. These are not "mutual" (that is, contemporaneous) debts and accordingly may not be canceled in bankruptcy. *Boston & Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562 (7th Cir.1986); cf. *In re Iowa R.R.*, 840 F.2d 535, 543–44 (7th Cir.1988). Holstein must pay Brill in full under his Chapter 11 plan, and Brill must pay Holstein in full under both Judge Katz's turnover order and Judge Wedoff's order. As both apparently have the means to do so, it all comes to the same thing as setoff, provided these lawyers live up to their obligations.

■ Increasing Brill's claim 4 years after the confirmation of Holstein's plan, and 5½ years after the bar date in the Chapter 11 case, is another matter entirely. Because the plan of reorganization does not specify the sum Holstein must pay Brill, an increase would not "modify" the plan in a way that 11 U.S.C. § 1127(b) forbids. Still, that statute implies that after confirmation and "substantial consummation" of a plan, changes that verge on modification must be rare. Neither Judge Katz nor the district judge discussed the significance of the confirmation of the plan and Holstein's substantial performance of his obligations. Both relied, instead, on the relation back principle of Fed.R.Civ.P. 15(c), applied to adversary proceedings in bankruptcy by Fed.R.Bankr.P. 7015 and to amended claims by *In re Unroe*, 937 F.2d 346 (7th Cir.1991), and *In re Stavriotis*, 977 F.2d 1202 (7th Cir.1992). We may assume, in the language of Rule 15(c)(2), that the "claim ... asserted in [Brill's] amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading". That an amendment would relate back to the original pleading does not make it appropriate for the court to permit the amendment.

■ Leave to amend should be freely granted early in a case, *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), but passing milestones in the litigation make amendment less appropriate. One milestone of particular significance in bankruptcy is the bar date. By then creditors must submit their proofs of claim. Once the claims are in, the parties may concentrate on determining their validity and providing for payment. How they will proceed depends on who claims how much. Some enlargement later by amendment may be appropriate, and the debtor may himself submit claims within a limited period after the bar date. See 11 U.S.C. § 501(c); Fed.R.Bankr.P. 3004; *In re Danielson*, 981 F.2d 296 (7th Cir.1992). Bankruptcy judges may decide to allow (see *Unroe*), or forbid (see *Stavriotis*), such changes in the exercise of reasoned discretion; in either case appellate review is deferential.

■ Confirmation of the plan of reorganization is a second milestone, equivalent to final judgment in ordinary civil litigation. *Kham & Nate's Shoes No. 2 v. First Bank of Whiting*, 908 F.2d 1351, 1354 (7th Cir. 1990). Once that milestone has been reached, further changes should be allowed only for compelling reasons. *In re Chappell*, 984 F.2d 775, 782 (7th Cir.1993). Cf. Fed.R.Civ.P. 60(b). Confirmation automatically discharges all debts other than those provided for in the plan, 11 U.S.C. § 1141(d)(1)(A), and "each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself." *In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir.1992). Modification of a confirmed and substantially consummated plan is forbidden except to the limited extent 11 U.S.C. § 1127 permits. Post-confirmation amendments make an end run around these provisions and may throw monkey wrenches into the proceedings, making the plan infeasible or altering the distributions to remaining creditors. Small claims may be conceded, while larger ones may be contested (by other creditors, if not by the

debtor). And whether or not late-breaking claims affect third parties' entitlements, they assuredly disrupt the orderly process of adjudication. To every thing there is a season, and the season for stating the amount of a debt is before the confirmation of a plan of reorganization.

What explains Brill's delay? A high hurdle for a litigant does not imply searching appellate review. Still, we must ensure that the bankruptcy and district judges applied the right standard. Neither judge, however, identified *any* appropriate reason for Brill's six-year delay in making a claim for $28,000. Brill's brief in this court is equally silent. He does not contend, for example, that essential documents became available only recently, or that Holstein hindered his efforts to compute unpaid wages accurately. His latest claim invokes an oral contract; he does not rely on documents. Brill received notice of the proceedings and of the two bar dates (one in Chapter 13 and another in Chapter 11). He made a claim for a little more than $11,000 without suggesting that the computation was tentative. Brill did not object to the disclosure statement or the plan of reorganization; he did not ask for discovery so that he could compute the back pay obligation using Holstein's records. There is nothing but the equivalent of: "Whoops, my mistake." Perhaps there is more: Brill asserts that after Holstein renewed his claim to the $7,000 and demanded an accounting, he was "forced to reanalyze the situation." In other words, he retaliated for Holstein's demand by increasing his own demands. A litigant's inattention, laziness, error, or desire to lash back at an adversary is not good cause by any standard. *Danielson*, 981 F.2d at 298; *United States v. Dumont*, 936 F.2d 292, 295 (7th Cir.1991); *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 602 (7th Cir.1987). Having kept his silence while the trustee was toting up Holstein's obligations, Brill cannot surface 5½ years later with a demand almost three times the original amount.

We asked the parties whether any other court ever had allowed a claim to be increased, for *any* reason, after confirmation of a plan of reorganization. Neither side could find such a decision under the 1978 Code, or for that matter under the 1898 Act during its final 50 years. Our search was equally fruitless. Without excluding the possibility of a post-confirmation amendment of a claim for cogent reason, we conclude that a creditor's inattention to the case or careless error in calculation does not suffice. As Brill has not provided any other explanation for the delay, a remand is unnecessary.

The judgment is affirmed to the extent it precludes a setoff of the debts and reversed to the extent it directs Holstein to pay Brill more than $11,318.

RIPPLE, Circuit Judge, dissenting.

I agree with the majority that there are limits on the authority of a bankruptcy court to allow an amendment under Federal Rule of Civil Procedure 15[1] to a proof of claim. *See In re Roberts Farms, Inc.*, 980 F.2d 1248, 1251 (9th Cir.1992) (stating that Rule 15 liberally permits amendment of proof of claim; however, a court should inquire whether opposing party would be unduly prejudiced by such amendment); *In re Unioil, Inc.*, 962 F.2d 988, 992–93 (10th Cir.1992) (stating same); *In re Wilson*, 96 B.R. 257, 262 (Bankr. 9th Cir.1988) (noting that in determining prejudicial effect of amendment to proof of claim, court should look to bad faith, unreasonable delay in filing, impact on other claimants, reliance by debtor or other claimants, and change of debtor's position). I also agree that Rule 15's concept of "relatedness" is not the only criteria, especially after the plan of reorganization has been confirmed. At that point in the litigation, an amendment to a proof of claim ought to be allowed rarely and only after careful evaluation by the bankruptcy court. That evaluation must take into consideration the reasons for the delay on the part of the creditor and

---

**1.** Bankruptcy Rule 7015 states that Federal Rule of Civil Procedure 15 applies in adversary proceedings.

the possibility of prejudice to others involved in the bankruptcy.

However, it is still important to remember that the matter of amendment is committed to the sound discretion of the bankruptcy judge. *In the Matter of Stavriotis*, 977 F.2d 1202, 1204 (7th Cir.1992). The bankruptcy court, especially in a Chapter 11 proceeding, is engaged in the delicate, complex, and sophisticated task of attempting to breathe life back into the bankrupt entity. The bankruptcy court is therefore in a unique position to appreciate the motivations of the creditors and the impact on the bankrupt estate from an amendment.

This is one of many cases to arrive in this court recently where a matter controlled by the abuse of discretion standard comes to us either unexplained or vaguely explained. This lack of explanation may be due in large measure to the pressures on courts of first instance, including bankruptcy courts, to deal with a great number of cases. However, this failure to communicate adequately with reviewing courts does provide, understandably, a significant unease on the part of appellate courts. It also provides a temptation for appellate courts to micromanage bankruptcy matters.

While prolonging bankruptcy proceedings is indeed regrettable, I believe the appropriate course in a case such as this is to remand the case to the bankruptcy court in order to allow that court to provide us with a more elaborate explanation of its reasons for permitting the amendment. The bankruptcy court did note that Mr. Brill was unable to compute the full amount of his claim when he filed the original proof of claim but left us in the dark as to when such information did become reasonably available to Mr. Brill. The bankruptcy court is also in a far superior position than we to determine the impact of such an amendment on the debtor and on any other remaining creditors.

I believe that remanding this case to the bankruptcy court is far more appropriate than engaging in factual assumptions at the appellate level. The majority concludes that Mr. Brill should have known the total of his legal fees long in advance of his amended filing. The majority also attributes to Mr. Brill a retaliatory motive for filing the amended proof of claim. This sort of fact-finding ought to be done on remand in the bankruptcy court rather than here.

Because I believe the bankruptcy court should have an opportunity to set forth in greater detail the basis of its decision to permit an amendment of Mr. Brill's proof of claim, I would remand this matter to the bankruptcy court for a more detailed elaboration.

