In re NATIONAL MERCHANDISE CO., INC., etc., Debtor.

In re PIC N' SAVE EAST FLORIDA CORP., INC., d/b/a Pic N' Save, Debtor.

In re B.F.L. CORPORATION, INC., d/b/a Pic N' Save, Debtor.

Bankruptcy Nos. 95–743–BKC–3P1, 95–744–BKC–3P1 and 95–746–BKC–3P1.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Feb. 10, 1997.

William Brinton, Jacksonville, FL, for Mitchel Trager.

Thomas Baumer, Jacksonville, FL, for Debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court on the Motion of Mitchell Trager, Trustee for Jason Mark Trager 21–Year Trust and David Scott Trager 21–Year Trust, For Order Authorizing Amendment of Proof of Claim 436 and the Motion of Mitchell Trager, Trustee For Jason Mark Trager 35–Year Trust and David Scott Trager 35–Year Trust, For Order Requiring Pic N' Save, Inc., As Reorganized Debtor, to Cure Defaults Under Assumed Lease. After hearings on August 8, 1996, August 29, 1996, September 5, 1996, and October 18, 1996, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The reorganized Debtor (Debtor) formerly operated a chain of discount retail stores in Florida and Georgia, under the name "Pic N' Save." From its inception, the chain has remained a family-owned business.

2. The majority shareholder and chief executive officer of the Debtor is Leonard Setzer. (Tr. Sept. 5, 1996 at 84–85). Alan Trager, Mitchell Trager, and Francine Trager Kempner are respectively the nephews and niece of Leonard Setzer. (Tr. Aug. 29, 1996 at 16–17). Francine Trager Kempner is an officer of the Debtor. (Tr. Sept. 5, 1996 at 84.)

3. Jason Mark Trager and David Scott Trager are the minor children of Alan Trager. On February 25, 1982, a 35–Year Trust and a 21–Year Trust were created for the benefit of Jason Mark Trager and David Scott Trager. Mitchell Trager serves as trustee for those trusts.

4. Since 1982, the Jason Mark Trager 35–Year Trust and the David Scott Trager 35–

Year Trust have owned undivided one-quarter shares of real property in Ocala, Florida on which Pic N' Save Store 42 is located. (Trager Ex. 2). The other one-half interest is owned by the Michael Stephen Setzer Trust. (Trager Ex. 2). Francine Trager Kempner serves as trustee for that trust. (Trager Ex. 2).

5. On March 29, 1982, Pic N' Save Central Florida Corp., Inc. (Pic N' Save Central), as tenant, entered into a ground lease with the Trager 35–Year Trusts and the Michael Stephen Setzer Trust. (Trager Ex. 5). Pic N' Save Central is the predecessor in interest to Pic N' Save East Florida Corp., Inc., one of the Debtors. (Trager Ex. 4).

6. Subsequent to the execution of the lease, but as contemplated by the lease, Pic N' Save Central executed a promissory Note (Note) in the amount of $700,000 in favor of First Federal Savings and Loan Association of Jacksonville (First Federal). (Trager Ex. 1). The loan financed the construction of Pic N' Save Store 42 on the Ocala property and was secured by a Mortgage (Mortgage) on the real property and Store 42. The Trager 35–Year Trusts and the Michael Stephen Setzer Trust, as owners of the property, joined in the Mortgage, in return for which Pic N' Save Central agreed to assume all obligations under the Mortgage. (Trager Ex. 5).

7. Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 22, 1995. At the time of filing, the Note and Mortgage were owned and held by First Union National Bank of Florida, successor by merger to First Federal Savings and Loan Association of Jacksonville.

8. After the petition date, the Debtor defaulted under the Note and Mortgage, and First Union indicated its intention to foreclose the Mortgage. (Tr. Aug. 29, 1996 at 19–20). To protect the Trusts' interests in the property, the Tragers and the Setzers determined to acquire the Note and Mortgage by assignment. (Tr. Aug. 29, 1996 at 19–20).

9. In the assignment transaction, the Tragers were represented by Michael Schneider (Schneider). The Setzers were represented by Leonard Selber and Alan Weiss, of the law firm of Holland & Knight. (Tr. Sept. 5, 1996 at 4–5). Through discussions between the Tragers and the Setzers, it was determined to acquire the Note and Mortgage through companion trusts to those which owned the property. (Tr. Aug. 29, 1996 at 71–76).

10. In July, 1995, the Note and Mortgage were acquired in one-fourth undivided shares each by the Jason Mark Trager 21–Year Trust and the David Scott Trager 21–Year Trust, for which Mitchell Trager serves as trustee, and a one-half undivided interest by the Faye Ashley Setzer Trust, for which Francine Trager Kempner served as trustee. (Trager Ex. 4). Combined, the Trager 21–Year Trusts paid $124,125.15 for its aggregate one-half interest in the Note and Mortgage. The Faye Ashley Setzer Trust paid an equal amount for its share.

11. Although a proposed intercreditor agreement between the Trager 21–Year Trusts and the Faye Ashley Setzer Trust was never signed, Schneider, Selber, and Weiss contemplated that each of the respective trusts' interests would be treated equal in all future transactions through mutual cooperation. (Tr. Aug. 29, 1996 at 76–78).

12. The claims bar date for this case was set for November 10, 1995. That date was a federal holiday, and it appears that the parties treated November 9, 1995, as the effective bar date. (Tr. Oct. 18, 1996 at 29).

13. Alan Weiss was responsible for protecting the interests of the Setzer Trusts, and prepared a proof of claim to protect the indebtedness due under the Note and Mortgage. (Tr. Sept. 5, 1996 at 12). Consistent with the prior discussions that the interests of the Trager 21–Year Trusts and the Faye Ashley Setzer Trust would be treated equally, Weiss initially prepared a draft of a single proof of claim to be executed by both Mitchell Trager and Francine Trager Kempner as trustees for their respective trusts. (Tr. Sept. 5, 1996 at 17). Weiss transmitted his draft to Schneider by telephone facsimile on

the afternoon of November 8, 1996. (Trager Ex. 11).

14. On the morning of November 9, 1996, Schneider telephoned Alan Trager. Trager directed Schneider to forward the proposed proof of claim to William Brinton of Allen, Brinton & Simmons, P.A., who was then in the process of preparing sixteen additional claims on behalf of the Coalition Partnership with respect to other Pic N' Save stores in which the Tragers had interests. (Tr. Aug. 29, 1996 at 79–81).

15. Schneider forwarded the draft proof of claim to Alan Trager, who then forwarded it to Brinton by facsimile on November 9, 1996. (Trager Ex. 10). After Brinton's review of the draft proof of claim, he spoke by telephone to Weiss several times to determine how to coordinate their efforts. During their conversations, Weiss related that Holland & Knight was seeking another attorney to assist in filing the proof of claim for the Trager Trusts to avoid concerns of potential conflicts of interest due to continuing disputes between the Setzers and the Tragers. (Tr. Aug. 29, 1996 at 35–36).

16. Weiss did not have a copy of the Note and Mortgage, and he sought verification of the amount of indebtedness to be included in the proof of claim. (Tr. Aug. 29, 1996 at 38.) He obtained this information from the office of C. Alan Bentley, an officer of the Debtor. (Tr. Sept. 5, 1996 at 59).

17. After consulting with Alan Trager, Brinton advised Weiss that Weiss' initial draft omitted the David Scott Trager Trust as a claimant, and failed to designate the distinction between the Trager 35–Year Trusts and the Trager 21–Year Trusts. Brinton also advised Weiss that the indebtedness reflected on Weiss' draft equaled only each sides' one-half share of the indebtedness due under the Note and Mortgage. (Tr. Aug. 29, 1996 at 40; Tr. Oct. 18, 1996 at 35). Neither Weiss nor Brinton was able to obtain a copy of the Note and Mortgage to attach to the proof of claim.

18. During their discussions on November 9, 1996, Brinton also advised Weiss of Alan Trager's concern that the hectic circumstances surrounding the filing of the proofs of claim might be an artifice designed in some manner to prejudice the Trager's interests in the property and the Note and Mortgage due to bitter litigation between the Setzers and Tragers over a period of several years. (Tr. Aug. 29, 1996 at 41, 51). Weiss assured Brinton of his intent to file companion proofs of claim which would assure the protection of all the parties' respective interests. (Tr. Aug. 29, 1996 at 40–42).

19. From their telephone conversations, Weiss and Brinton determined to file separate proofs of claim to be submitted substantially as mirror images of each other, such that in combination they would protect all of the indebtedness due under the Note and Mortgage. (Tr. Aug. 29, 1996 at 36–37; Tr. Sept. 5, 1996 at 20). Following these discussions, Weiss and Brinton separately prepared and filed proofs of claim on behalf of the Faye Ashley Setzer Trust and the Trager 21–Year Trusts, respectively. (Tr. Ex. 9; Trager Ex. 6).

20. The proof of claim prepared by Weiss was filed on behalf of Francine Trager Kempner, as Trustee for the Faye Ashley Setzer Trust, seeking $124,125.15 as an "unsecured priority claim" for "rent payments and other charges under the ground lease dated March 29, 1982." (Trager Ex. 6). On Weiss' original draft, box five of the standard claim form was annotated to reflect the indebtedness as "unsecured." With the exception of changing the designation of the indebtedness from an unsecured non-priority claim to an unsecured priority claim in box four of the standard claim form, the specifics of Weiss' final proof of claim substantially tracked his initial draft. (Compare Trager Ex. 6 and Trager Ex. 10).

21. The proof of claim prepared by Brinton (Claim 436) was filed on behalf of Mitchell Trager as Trustee of the Trager 21–Year Trusts in the amount of $124,125.45, reciting in box one of the standard claim form that the indebtedness was due for "payments and other charges under Mortgage and Note."

(Trager Ex. 9). In box seven of the standard claim form, Brinton annotated that the Note and Mortgage were "not presently available, but in possession of Debtor/Debtor's agents." (Trager Ex. 9). However, Brinton annotated boxes four and five of the standard claim form to reflect the indebtedness as an "unsecured non-priority claim." (Trager Ex. 9).

22. At the same time, Brinton prepared two companion proofs of claim which were filed on behalf of the Trager 35–Year Trusts. One claim was filed for potential lease rejection damages under the lease on the contingency that it might be rejected (Debtor Ex. 1), and one was filed for one-half of unpaid real estate taxes in the event of the same contingent rejection. (Debtor Ex. 2). By preparing the three companion proofs of claim, Brinton segregated the respective claims properly to be asserted by the Trager 35–Year Trusts, as owners of the property and landlords under the lease, as opposed to the Trager 21–Year Trusts, as holders of interests under the Note and Mortgage.

23. As of his preparation of these proofs of claim on November 9, 1995, Brinton had no knowledge of the Debtor's intentions with respect to assumption of the lease. (Tr. Aug. 29, 1996 at 43–44).

24. On December 29, 1995, the Debtor filed a motion for authorization to assume the lease. (Trager Ex. 15). Notwithstanding the prior filing of Claim. No. 436 by the Trager 21–Year Trusts, the Debtor acknowledged that at all material times prior to confirmation of its plan of reorganization, the Debtor always contemplated that all the indebtedness due under the Note and Mortgage would be treated as secured. (Tr. Sept. 5, 1996 at 51).

25. On February 23, 1996, this Court entered an order authorizing assumption of the lease and also entered its order confirming the Debtor's second amended joint plan of reorganization. (Trager Ex. 19; Trager Ex. 16). Mitchell Trager, as Trustee of the Trager 35–Year Trusts and the Trager 21–Year Trusts did not object to or appeal confirmation of the plan. (Tr. Oct. 18, 1996 at 11, 43–44).

26. The plan provided that secured claims in Class 4 would be paid "upon such terms ... agreed to between the Debtors or Reorganized PNS and such Claimant." (Trager Ex. 18, Article III, Section 3.01(D)(2)). The plan further provided that unsecured claims in Class 5 would receive 13.25% of their allowed claims.

27. Although Weiss' claim on behalf of the Faye Ashley Setzer Trust was filed as an unsecured claim, the Debtor reached an agreement with Francine Trager Kempner with respect to payment of that portion of the indebtedness due under the Note and Mortgage owing to the Faye Ashley Setzer Trust. (Tr. Sept. 5, 1996 at 60–61). The claim was treated as a secured claim, which would be paid in thirty-six monthly installments at an interest rate of nine percent. (Trager Ex. 7).

28. Brinton's claim, however, which was also filed as unsecured, was treated as an unsecured claim, and in accordance with the plan, the Debtor issued a check in the amount of $16,446.62 to Mitchell Trager as Trustee for the Jason and David Trager 21–Year Trusts. (Trager Ex. 12). The check was received by the Brinton Law Firm. The amount of the distribution check equaled 13.25% of claim 436 filed by Brinton. (Tr. Sept. 5, 1996 at 65).

29. Upon learning of the receipt of the check, Schneider contacted Weiss regarding the purpose of the check. Weiss indicated that he was not familiar with the check, but reiterated his understanding that the Trager 21–Year Trusts were to receive equal treatment with the Faye Ashley Setzer Trust. (Tr. Aug. 29, 1996 at 88–91).

30. Subsequent to the issuance of the distribution check, C. Alan Bentley, officer and representative of the Debtor, advised the Tragers that the Debtor considered that portion of the indebtedness due under the Note and Mortgage to the Trager 21–Year Trusts to be paid in full by virtue of the receipt of the distribution check. (Tr. Oct. 18, 1996 at 20–22).

31. The Brinton Law Firm was unsure of the purpose of the unsecured distribution

check, and to preserve the status quo, exchanged the distribution check for a cashier's check in the same amount. (Tr. Aug. 29, 1996 at 47–49). On August 29, 1996, this Court directed Brinton to deposit the cashier's check in an interest-bearing account until further order of the Court.

32. Notwithstanding the Debtor's assumption of the lease and confirmation of the plan, prepetition rents owing to the Trager 35–Year Trusts remained unpaid by the Debtors. On June 10, 1996, Mitchell Trager filed his motion on behalf of the Trager 35–Year Trusts seeking an order requiring the Debtor to cure the defaults under the lease, by reason of Debtors' failure to pay the share of indebtedness owing under the Note and Mortgage to the Trager 21–Year Trusts, as well as the delinquent prepetition rents. Debtor subsequently paid the prepetition rents. (Tr. Oct. 18, 1996 at 23).

33. On August 2, 1996, Mitchell Trager filed his motion on behalf of the Trager 21–Year Trusts seeking an order authorizing an amendment to claim 436 to reflect its nature as a secured claim.

34. The Debtor opposed both the motion to require Debtor to cure defaults under the lease and the motion authorizing the amendment to claim 436.

## CONCLUSIONS OF LAW

### I. Motion for Order Authorizing Amendment to Claim 436

The Court must first determine whether the law permits Trager to amend claim 436 filed on behalf of the Trager 21–Year Trusts. Trager argues that the amendment should be allowed because the Debtor knew of the secured status of the claim. Trager argues that the Debtor scheduled the indebtedness due under the Note and Mortgage as a secured debt owed to First Union. (Trager Brief at 2–3).

Trager also argues that because the Debtor's insiders knew of the correlation between the Trager Trusts and the Faye Ashley Set-

zer Trust, the Trager Trust should have also been treated as secured under the plan. Trager asserts that the proposed amendment, which changes the unsecured status to secured and attaches a copy of the Note and Mortgage, does not assert a new claim, but merely corrects an error in the original claim. Trager further argues that because the Debtor originally scheduled the debt as secured, it will not suffer any prejudice by the amendment. (Id.).

The Debtor, however, argues that the confirmed plan is a binding contract on all parties and has res judicata effect on the treatment of claims filed. (Debtor Brief at 6). The Debtor argues that it relied on that contact when making its distribution to the Trager Trusts. The Debtor further argues that it will be prejudiced if it has to reclassify the claim because the amendment would require the Debtor to distribute over $100,000 to the Tragers. The Debtor further argues that the Court should disallow the amendment because Brinton had three months prior to confirmation to review and amend the claim, but failed to do so. Brinton also had five months after confirmation to review the claim and bring the error to the Court's attention. (Id. at 12–17).

### A. Test for Allowing Amendments to Claims

The Eleventh Circuit Court of Appeals and this Court have routinely considered several factors when determining whether to allow an amendment to a proof of claim. See United States v. International Horizons, Inc. (In re International Horizons, Inc.), 751 F.2d 1213 (11th Cir.1985); Norris Grain Co. v. United States (In re Norris Grain Co.), 81 B.R. 103 (Bankr.M.D.Fla.1987), aff'd 131 B.R. 747 (M.D.Fla.1990), and aff'd 969 F.2d 1047 (11th Cir.1992).

Essentially, the factors utilized by this Court and others can be categorized into a two-prong test. The first prong provides factors for determining whether the amendment is a true amendment to a timely filed claim, or a new claim being disguised as an amendment. Norris Grain, 81 B.R. at 106.

The second prong provides an equitable balancing test under which a court might allow the amendment. *Id.* at 107.

### 1. Trager's Proposed Amendment is a New Claim

The Eleventh Circuit has held that an amendment to a timely filed proof of claim is allowed if the amendment is purposed to "cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim." *United States v. International Horizons, Inc. (In re International Horizons, Inc.),* 751 F.2d 1213, 1216 (11th Cir.1985). Although technical errors in claims can be corrected by amendment, the Eleventh Circuit has also stated that courts must carefully scrutinize such amendments to insure that the creditor is not seeking to file a new claim "under the guise of amendment." *Id.*

Trager argues that the proposed amendment to claim 436 is not a new claim. Rather, he argues that the amount of the claim, the identity of the claimants, and the basis of the claim remain unchanged, and that the amendment is simply designed to correct a clerical error relating to the secured status of the claim.

This Court, however, agrees with other courts which have held that changing an unsecured claim to a secured claim equates filing a new claim. In *In re Wrenn Insurance Agency of Missouri, Inc.,* 178 B.R. 792 (Bankr.W.D.Mo.), the Bankruptcy Court for the Western District of Missouri disallowed a proposed amendment which attempted to change an unsecured claim to a secured claim. The court concluded that because unsecured claims and secured claims are separate entities, one could not be amended into another, and that such a change in the status of the claim was in effect an attempt to file a new claim. *Id.* at 799. Other courts have also held that changing the status of a claim from unsecured to secured is an attempt to file a new claim. *See In re Brown,* 159 B.R. 710, 715 (Bankr.D.N.J.1993) (holding that an

unsecured claim cannot be amended to include a secured claim because the two are separate claims.); *In the Matter of Alliance Operating Corp.,* 173 B.R. 326, 329 (E.D.La. 1994) (holding that "an amendment to a proof of claim that changes the claim from an unsecured status to a priority status quite obviously sets forth a new claim."), *aff'd* 60 F.3d 1174 (5th Cir.1995).

This Court has held that the bar date for filing proofs of claim acts as a statute of limitations against subsequent amendments. *In re Wolray Hotels, Inc.,* 99 B.R. 480, 481 (Bankr.M.D.Fla.1989). Additionally, the Court has held that once confirmed, a Debtor's plan is binding on all claimants whose claims are appropriately dealt with under the plan. *In re Auto Dealers Services, Inc.,* 89 B.R. 233, 235 (Bankr.M.D.Fla.1988). A confirmed plan provides finality to the reorganization process because it provides a method "under which management of the Debtor will process claims in the normal course of business and pay them pursuant to the simple calculations set forth in the [p]lan." *Id.* at 236.

This Court agrees with other courts that have disallowed amendments to proofs of claim after the confirmation date. The Fifth Circuit Court of Appeals has held that the doctrine of res judicata applies to all claims provided for in a confirmed plan. *American Surety Co. of New York v. Coral Gables First National Bank (Matter of Constructors of Florida, Inc.),* 349 F.2d 595 (5th Cir.1965). *See also NCL Corp. v. Lone Star Building Centers (Eastern) Inc.,* 144 B.R. 170 (S.D.Fla.1992) (holding that res judicata bars the relitigation of claims dealt with in a confirmed plan); *Bowen v. United States (In re Bowen),* 174 B.R. 840, 844 (Bankr.S.D.Ga. 1994) (stating that "[t]he res judicata effect of an order confirming a plan of reorganization is contained in both common law notions of res judicata and the Bankruptcy Code at 11 U.S.C. § 1141(a)."). The Seventh Circuit Court of Appeals has also held that "[p]ost-confirmation amendments ... throw monkey wrenches into the proceedings, making the

plan infeasible or altering the distributions to remaining creditors.... To every thing there is a season, and the season for stating the amount of a debt is before the confirmation of a plan of reorganization." *Holstein v. Brill,* 987 F.2d 1268, 1270–71 (7th Cir.1993).

■ This Court concludes that the amendment proposed by Trager is in effect an attempt to assert a new claim. The amendment does not seek merely to cure a defect in the original claim, describe that claim in detail, or plead a new theory of recovery on the facts set forth in the original claim. Rather, the amendment seeks to change the status of the claim from unsecured to secured. Such a change would require Trager to file a new claim, and this Court finds that such a claim would be barred by the res judicata effect of the confirmed plan.

#### 2. *Equitable Factors Do Not Favor Allowance of Amendment*

Although the Court could end its inquiry by determining that the amendment seeks to file a new claim and should be disallowed, the Court will examine the equitable factors it has relied on previously to determine whether the amendment should be allowed.

■ The Eleventh Circuit Court of Appeals has approved and this Court has utilized an equitable balancing test known as the "Miss Glamour" factors to determine whether it would be "fair" to permit a post-confirmation amendment to a claim. *See United States v. International Horizons, Inc. (In re International Horizons, Inc.),* 751 F.2d 1213, 1218 (11th Cir.1985) (finding no abuse of discretion in Bankruptcy court's employment of the equitable balancing factors.); *In re Haack,* 165 B.R. 501, 504 (Bankr.M.D.Fla.1994) (citing *Norris Grain Co. v. United States (In re Norris Grain Company),* 81 B.R. 103, 107 (Bankr.M.D.Fla. 1987), *aff'd* 131 B.R. 747 (M.D.Fla.1990), *and aff'd* 969 F.2d 1047 (11th Cir.1992). *See also In re Miss Glamour Coat Co.,* 80–2 USTC § 9737 (S.D.N.Y.1980). Under this test, the Court must consider

(1) whether the debtor and creditors relied upon the earlier proof of claim or had reason to know that subsequent proofs of claim would follow;

(2) whether claimant intentionally or negligently delayed filing the "amendment";

(3) the justification, if any, for claimant's failure to file for an extension for filing proofs of claim;

(4) whether or not there are any other equitable considerations which should be taken into account in assuring a just and equitable result.

*In re Haack,* 165 B.R. 501, 504 (Bankr. M.D.Fla.1994) (citing *Norris Grain Co. v. United States (In re Norris Grain Company),* 81 B.R. 103, 107 (Bankr.M.D.Fla.1987), *aff'd* 131 B.R. 747 (M.D.Fla.1990), *and aff'd* 969 F.2d 1047 (11th Cir.1992).

#### a. Debtor relied on original claim

■ The first element hinges on the Debtor's reliance on the original proof of claim and whether the Debtor should have known that the claimant would file a subsequent claim. In this case, Trager argues that because Brinton Noted on the original claim that it was premised on a Note and Mortgage, the Debtor should have known it was a secured claim and the Debtor should have anticipated an amendment. (Trager Brief at 20).

The Debtor relied on the original claim in confirming and performing the plan, and to change the status of the unsecured claim to secured would require the Debtor to increase its distribution to the Tragers by over $100,000. The Court concludes that because a proof of claim is deemed valid as filed unless disputed, the Debtor rightfully relied on the original proof of claim and made a distribution to the Trager Trusts as unsecured claimants.

#### b. Other creditors would not receive a windfall

Trager argues that Leonard Setzer and Francine Trager Kempner, as insiders of the

Debtor, would benefit if the estate did not have to pay the full amount of the secured claim of the Trager 21–Year Trusts. (Trager Brief at 20–21). Although this may be true, this factor requires an examination of other creditors. Under the plan, other creditors have received distributions on unsecured claims or they have worked out payment arrangements with the Debtor to cure secured claims. Thus, no other creditor would receive more than they otherwise would have under the confirmed plan.

### c. Claimant negligently delayed filing the amendment

Trager argues that there is no evidence of bad faith or dilatory tactics on their part. They simply tried to file a mirror image of the Faye Ashley Setzer Trust claim and inadvertently filed a claim with clerical errors. The Court, however, finds that counsel for the Trager Trusts negligently delayed filing a timely amendment to the claim. Additionally, although Brinton carefully undertook to correct multiple errors in Weiss' draft, he skipped a blatant error in leaving the claim marked "unsecured" when it should have been "secured." Brinton also failed to review the Note and Mortgage prior to filing the claim and prior to confirmation. He then waited nine months to attempt to amend the proof of claim. Finally, Brinton accepted a distribution check from the Debtors and held it for four months. Despite his argument that he relied on Weiss' claim which contained errors, Brinton failed to timely cure the defects in the Trager claim.

### d. Claimant did not seek an extension of the bar date

The Court finds that in this case, the claimant did not seek an extension of the bar date and offered no justification for failing to do so.

### e. Other equitable factors apply

Trager argues that its claim on behalf of the Trager 21–Year Trusts should have been treated as secured because the Faye Ashley Setzer claim, although similarly flawed, was treated as secured. Although the Court rec-

ognizes the seemingly disparate treatment of these claims, the Debtor did not object to the Faye Ashley Setzer claim, and chose to negotiate a payment plan with that creditor. The fact that the Setzer Trust received different treatment by the Debtor when the two claims were intended to be mirror images of each other does not negate the fact that the Trager claim was erroneous and cannot be corrected by way of amendment after the confirmation date.

The Court must also consider the prejudice to each side if the amendment is allowed. If the amendment is allowed, the Debtor would be forced to recalculate portions of its plan to accommodate a second distribution to the Trager Trusts. Although Trager argues that the interests of the Trusts in the Note and Mortgage will be severely prejudiced if the amendment is not allowed, the Court finds that the claimant had avenue available to insure that the claim was correct and failed to adequately protect their interests through a timely amendment or through an objection to confirmation of Debtor's plan. The Trager Trusts received a fair distribution based on the claim filed.

### 3. Amendment Should Not Be Allowed

Based on the Court's analysis of the factors above and the Court's finding that the proposed amendment by Trager asserts a new claim, the Court will deny the motion to authorize the amendment.

## II. Motion to Cure Defaults Under Lease

Under the lease, the Debtor was required to make payments on the Note and Mortgage. Upon Trager's receipt of the distribution check, however, the Debtor's obligation under the Note and Mortgage were discharged. Thus, the Court finds that the motion to cure defaults under the lease is moot.

### Conclusion

The proof of claim filed on behalf of the Trager 21–Year Trusts was an unsecured claim for obligations under a Note an Mortgage. That claim was included in the Debtor's plan of reorganization as an unsecured

claim and the Debtor disbursed funds to the Trager Trusts in accordance with the plan's treatment of unsecured creditors. The confirmed plan has res judicata effect and is binding on all parties to it. Trager failed to amend the claim in a timely fashion, and his proposed post-confirmation amendment to the claim would serve only to create chaos in the Debtor's distribution schedule.

Additionally, the proposed amendment is improper because it attempts to assert a new secured claim in the place of the original unsecured claim. Because the natures of these two claims are different, the claimant cannot be permitted to assert a new claim disguised as an amendment.

The equitable factors considered by the Court do not favor allowing the amendment. The claimant's counsel was familiar with the bankruptcy proceedings of the Debtor. The Debtor would be prejudiced if required to recalculate its distribution schedule to include this creditor as a secured claimant.

Trager's motion to require Debtor to cure defaults under the lease is moot and should be denied.

Accordingly, by separate order, the Court will deny the motion to amend claim 426 and the motion to require Debtor to cure defaults under the lease.