**In re CHANNELINX, INC., Debtor.**

**Harold Miller, Robert Thomas, and Gary Hyman, Plaintiffs,**

**v.**

**ChanneLinx, Inc., James D. Zielinski, Daniel Schmidt, DGS Management, LLC, Halong Investments, Hanley–Wood, Herwald Financial Consulting, LLC, iHousing, and Kurt Herwald, Defendants.**

**Bankruptcy No. C/A 03–01262–W. Adversary No. 03–80475.**

United States Bankruptcy Court, D. South Carolina.

Feb. 9, 2004.

---

Julio E. Mendoza, Jr., Lead Attorney, Nexsen Pruet Jacobs Pollard, Columbia, SC, for Debtor.

Joseph F. Buzhardt, III, Office of the United States Trustee, Columbia, SC, for Trustee.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon ChanneLinx, Inc.'s ("Debtor") Motion to Dismiss ("Motion"). Debtor filed the Motion on October 28, 2003 in order to dismiss three causes of action brought by Harold Miller ("Miller"), Robert Thomas ("Thomas"), and Gary Hyman ("Hyman")

(collectively, the "Plaintiffs"). The three causes of action Debtor seeks to dismiss are breach of fiduciary duty, breach of contract accompanied by a fraudulent act, and negligent misrepresentation. In response, Plaintiffs filed an Objection to Debtor's Motion. Based upon the record, pleadings, and arguments presented at the hearing, the Court makes the following Findings of Facts and Conclusions of Law.

## FINDINGS OF FACT

1. On February 3, 2003, Debtor filed its petition for relief under Chapter 11 of the United States Bankruptcy Code. Debtor has operated as the debtor-in-possession throughout this case.

2. Plaintiffs are former officers and employees of Debtor. Debtor classified Plaintiffs as non-priority, unsecured creditors in its confirmed Plan of Reorganization, as amended ("Chapter 11 Plan").

3. In Schedule F, Debtor listed Plaintiffs as creditors holding unsecured, non-priority claims against the estate. Debtor identified the Plaintiffs and provided information for their claims as follows:

(a) Miller is listed as a creditor in the amount of $132,391.26, for a claim based upon "Subordinated Debt and Deferred Pay."

(b) Thomas is listed as a creditor in the amount of $98,466.34, for a claim based upon "Subordinated Debt and Deferred Pay."

(c) Hyman is listed as a creditor in the amount of $86,537.50, for a claim based upon "Subordinated Debt."

4. On February 4, 2003, the Clerk of Court prepared and filed the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines ("Bankruptcy Notice") in this case. The Bankruptcy Notice specifically provided that the deadline to file a proof of claim or interest, for all creditors other than governmental units, was June 5, 2003 (the "Bar Date").

5. A Certificate of Service indicated that the Bankruptcy Notice was served by First Class mail on Plaintiffs on February 6, 2003.

6. On the Bar Date, Plaintiffs individually filed proofs of claim in Debtor's case.

7. Miller filed his proof of claim in the amount of $132,391.26 and indicated that the basis for his claim was "Services Performed," "Money Loaned," and "Wages."

8. Thomas filed a proof of claim in the amount of $98,466.34 and indicated that the basis for his claim was "Money Loaned" and "Wages."

9. Hyman filed a proof of claim in the amount of $87,000.00 and indicated that the basis for his claim was "Money Loaned."

10. Plaintiffs were treated in Debtor's original Plan of Reorganization filed on June 6, 2003 as Class 24 claimants consisting of the non-priority unsecured claims of 2001 Subordinated Notes. Class 24 was listed as subordinate to all other unsecured debt and was to receive shares of common stock in Debtor's reorganized entity. Debtor's First Amendment to Plan of Reorganization filed on July 8, 2003, provided that Class 24 was to receive nothing, was impaired, and was deemed to have rejected the Chapter 11 Plan. Finally, on July 16, 2003, Debtor filed its Second Amendment to Plan of Reorganization noting that one or more of the Class 24 holders of the 2001 Subordinated Notes maintain that they are not subordinated to other non-priority unsecured debt [the Plaintiffs]. Accordingly, the Second Amendment preserved their rights to file "the appropriate pleading with the Court seeking a determination that the 2001 Subordinated Notes are not subordinated to, but are entitled to *pari pasu* treatment with, the other non-

priority unsecured creditors in Class 23 of the Plan." Plaintiffs objected to Debtor's Chapter 11 Plan in that, as stated in Debtor's objected to confirmation of Debtor's Chapter 11 Plan of Reorganization, they believe they are not subordinate to other non-priority unsecured debt.

11. On July 31, 2003, the Court entered an Order Granting Final Approval of Disclosure Statement and Confirming Plan of Reorganization ("Confirmation Order") that confirmed Debtor's Chapter 11 Plan, as amended by Debtor on July 8, 2003 and July 16, 2003. The Confirmation Order notes that Debtor's Chapter 11 Plan "provides that the [Plaintiffs] have a period of forty-five (45) days after confirmation of the Plan in which to file appropriate pleadings with the Court seeking a determination on the subordination issues . . . ."

12. Plaintiffs filed a Complaint on September 15, 2003 within the forty-five (45) day period and commenced this adversary proceeding by naming Debtor and certain creditors as defendants. On September 24, 2003, Plaintiffs filed an Amended Complaint. In the Amended Complaint, Plaintiffs allege the following four causes of action: breach of fiduciary duty ("Fiduciary Action"), equitable subordination under 11 U.S.C. § 510(c)(1) [1] ("Equitable Subordination Action"), breach of contract accompanied by a fraudulent act ("Contract Action"), and negligent misrepresentation ("Misrepresentation Action"). Furthermore, Plaintiffs claim damages against Debtor for the Fiduciary Action, the Contract Action, and the Misrepresentation Action.

13. The Fiduciary Action, Contract Action, and Misrepresentation Action are pre-petition claims based on alleged prepetition conduct of Debtor and other creditor-defendants named in the Amended Complaint.

14. However, before expiration of the Bar Date, Plaintiffs did not file proofs of claim based upon the Fiduciary Action, Contract Action, and Misrepresentation Action presented in their Amended Complaint.

15. At the hearing held on the Motion, Plaintiffs, through counsel, indicated that they filed these causes of action against Debtor primarily in order to improve their payment priority through the subordination of claims held by other creditor-defendants. The subordination of claims is a separate cause of action alleged against Debtor and the other creditor-Defendants. Furthermore, Plaintiffs indicated that the damages sought from Debtor beyond subordination were for attorneys' fees.

## CONCLUSIONS OF LAW

■ On a motion to dismiss, all facts must be construed in the light most favorable to the non-moving party and the allegations of the Complaint are taken as true. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130 (4th Cir.1993); *Martin Marietta Corp. v. Int'l Telecommunications Satellite Org.,* 991 F.2d 94 (4th Cir.1992). The issue before the Court is whether Plaintiffs are barred from filing causes of action against Debtor that were not asserted by Plaintiff's filing of proofs of claim nor preserved in Debtor's Chapter 11 Plan and Order Confirming Plan. The Court is guided by the Bankruptcy Code and binding precedent that directly addresses this matter.

11 U.S.C. § 1141 effectively binds the Plaintiffs to the rights provided to them under Debtor's Chapter 11 Plan. 11 U.S.C. § 1141(a) states as follows:

Except as provided in (d)(2) and (d)(3) of this section, the provisions of a con-

---

1. Further internal references to the Bankrupt- cy Code will be by section number only.

firmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).

In light of such statutory language, the Fourth Circuit has stated:

> A bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect. Pursuant to 11 U.S.C. § 1141(a), all parties are bound by the terms of a confirmed plan of reorganization. Consequently, parties may be precluded from raising claims they could have or should have raised before confirmation of a bankruptcy plan, but failed to do so.

*First Union Commercial Corp. v. Nelson, Mullins, Scarborough, & Riley (In re Varat)*, 81 F.3d 1310, 1315 (4th Cir.1996) (internal citation omitted).[2] *See also In re Nat'l Merchandise Co., Inc.*, 206 B.R. 993, 999 (Bankr.M.D.Fla.1997). Allowing Plaintiffs to file new, pre-petition claims against Debtor post-confirmation is contrary to the effect of § 1141(a) and Fourth Circuit precedent. *See id.* Since the Debtor's Chapter 11 Plan and the Confirmation Order only provide that Plaintiffs may bring an equitable subordination action within forty-five (45) days of confirmation of Debtor's Plan, Plaintiffs are foreclosed from prosecuting causes of action that extend beyond equitable subordina-

tion pursuant to § 1141. Accordingly, confirmation of Debtor's Chapter 11 Plan barred Plaintiffs from filing their Fiduciary Action, Contract Action, and Misrepresentation Action against Debtor. *See In re Nat'l Merchandise Co., Inc.*, 206 B.R. at 1000 (concluding that amendments to claims were actually new claims that were barred by the *res judicata* effect of debtor's confirmed plan).

█ Plaintiffs contend that the filing of their Amended Complaint constituted an amendment to their timely filed proofs of claim and should thus be allowed despite entry of the Court's Order Confirming Plan. The Eleventh Circuit has noted that courts must scrutinize post bar date amendments to timely filed proofs of claim to insure that the creditor is not seeking to file a new claim "under the guise of amendment." *United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.)*, 751 F.2d 1213, 1216 (11th Cir.1985). The Court first notes that the terms of the Order Confirming plan provided Plaintiffs with the ability to file appropriate pleadings with the Court seeking a determination that their claims are not subordinated to certain other non-priority unsecured creditors. By way of a Complaint and a subsequent Amended Complaint (together, the "Complaint") filed approximately two months after confirmation of Debtor's Chapter 11 Plan, Plaintiffs pled their Fiduciary Action, Contract Action and Misrepresentation Action against Debtor. However, such causes of action depart from the contractual obligation and equity theories stemming from recovery of a note obligation and deferred compensation characterized in Plaintiffs' proofs of claim. In

---

**2.** The elements of *res judicata* generally are 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding. *Varat*, 81 F.3d at 1315. All of the elements are met in this case.

their proofs of claim, Plaintiffs disclosed no facts that would indicate that they sought to recover debts based upon the various tort and fraud claims alleged in their Complaint. Thus, by pleading the Fiduciary Action, Contract Action and Misrepresentation Action, Plaintiffs are essentially filing new claims post-confirmation. Accordingly, these claims are new claims "under the guise of amendment" and will not be allowed. *See* 11 U.S.C. § 502(b)(9) and Fed. R. Bankr.P. 3003(c)(2) and (3).

■ Furthermore, even if the Court were to consider Plaintiffs' Complaint as a valid amendment, the new claims that Plaintiffs raised have been effectively discharged pursuant to § 1141(d)(1). 11 U.S.C. § 1141(d)(1) provides:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan-
>
> (A) *discharges the debtor from any* debt that arose before the date of such confirmation, ... whether or not—
>
> i. a proof of the claim based on such debt is filed or deemed filed under section 501 of this title; or

ii. such claim is allowed under section 502 of this title; or

iii. the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

11 U.S.C. § 1141(d)(1). Accordingly, a plain read of § 1141(d)(1) provides that the additional causes of action raised by Plaintiffs were discharged upon confirmation. *See also Holstein,* 987 F.2d at 1270–71 (holding that the time for amending a proof of claim to indicate the proper amount of claim is prior to confirmation of a debtor's Chapter 11 plan).[3]

Equitable considerations may also be examined in determining whether Plaintiffs' additional Fiduciary Action, Contract Action, and Misrepresentation Action may be brought against Debtor. *See In re Nat'l Merchandise Co.,* 206 B.R. at 1000 (examining equitable factors to determine whether to permit amendment of claims post-confirmation).[4] Debtor relied on the initial proofs of claim made by Plaintiffs when formulating its Chapter 11 Plan. Based upon those proofs of claims and Plaintiffs' actions, Debtor had no reason to know that Plaintiffs would assert tort claims or seek

---

3. The Court recognizes that in *Holstein v. Brill,* 987 F.2d 1268 (7th Cir.1993) there was substantial consummation of the debtor's Chapter 11 plan whereas there has been no substantial consummation in Debtor's case *sub judice.* However, the Court cites to *Holstein* only with respect to the Seventh Circuit's holdings concerning the effects resulting from confirmation of a Chapter 11 plan.

4. The equitable factors that the court in *National Merchandise* examined are as follows: (1) whether debtor and creditors relied upon the earlier proof of claim or has reason to know that subsequent proofs of claim would follow; (2) whether claimant intentionally or negligently delayed filing its amendment to its proof of claim; (3) the justification, if any, for

claimant's failure to file for an extension for filing proofs of claim; and (4) whether or not there are any other equitable considerations which should be taken into account in assuring a just and equitable result. While the court in *National Merchandise* examined the four equitable factors provided by *In re International Horizons,* this Court finds that such a list, although helpful, is neither exclusive nor fully comprehensive. Thus, the unique and relevant circumstances the Court finds attendant in a case dictate the guidelines for determining equitable factors to examine when determining whether amendment to claims or new claims are permissible post-bar date or post-confirmation.

additional monetary damages against Debtor. To permit Plaintiffs to bring their additional claims after confirmation of Debtor's Chapter 11 Plan would prejudice Debtor and other creditors not named in Plaintiffs' Amended Complaint since defending against Plaintiffs' additional claims would strain Debtor's ability to pay creditors and consummate its Plan. *See Holstein,* 987 F.2d at 1270–71 (noting that post-confirmation amendments make an end run around Bankruptcy Code provisions § 1141(d)(1)(A) and § 1127 and "may throw monkey wrenches into the proceedings, making the plan infeasible or altering the distributions to remaining creditors;" further changes to plan post-confirmation should only be allowed for compelling reasons).

Plaintiffs also contend that they did not recognize additional damages because they had not received Debtor's plan until well after the Bar Date. Plaintiffs cannot rely on their ignorance of the law or the timing they received Debtor's Chapter 11 Plan as an excuse. Plaintiffs have been active throughout Debtor's case and the Court encouraged Plaintiffs to seek the aid of counsel. Nevertheless, Plaintiffs chose to act pro se until they finally retained counsel post-confirmation in order to file their

Complaint and Amended Complaint. Furthermore, Plaintiffs' level of involvement in this case indicates that they understood the measures needed to be taken to protect their interests.[5]

Plaintiffs raised objections to Debtor's Chapter 11 Plan in order to seek better treatment under such Plan vis-a-vis the subordination of other creditors. In order to accommodate Plaintiffs' desire to seek better treatment under the Plan, both the Court's Confirmation Order and Debtor's Plan provide Plaintiffs with the ability to seek equitable subordination of other priority creditors' claims within forty-five (45) days after the date of confirmation. Thus, barring Plaintiffs' additional claims would not foreclose Plaintiffs from pursuing equitable subordination as contemplated by the parties and the Court with respect to the other creditor-defendants named in their Amended Complaint.[6]

Finally, the Court notes that even if Plaintiffs brought these actions in good faith, they had sufficient opportunities to protect their interests. Upon considering the facts and circumstances attendant in this case, including § 1141 and the binding effect of Debtor's Chapter 11 Plan as well as the equitable considerations addressed herein, the Court dismisses Plaintiffs' Fi-

**5.** Plaintiffs made reference to "excusable neglect" as a ground to permit them to change the nature of their claim against Debtor because Plaintiffs filed their proofs of claim pro se. In *Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court stated that determining what sort of neglect is "excusable" is essentially an equitable determination premised upon examination of the surrounding circumstances of Plaintiffs' omissions including the following factors: (1) the danger of prejudice to Debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay with respect to whether it was within the reasonable control of Plaintiffs, and (4) whether Plaintiffs acted

in good faith. *Id.* at 395, 113 S.Ct. 1489. Weighing these factors, the Court finds that Plaintiffs' negligence in failing to timely file their Fiduciary Action, Contract Action, and Misrepresentation Action was not excusable.

**6.** Debtor has indicated that the outcome of an equitable subordination action, as contemplated by the Court and the parties, does not affect Debtor and is primarily a dispute between Plaintiffs and the other Defendants. The distribution by Debtor pursuant to Debtor's Chapter 11 Plan will be the same regardless of the order in which such distribution is made to creditors. The Court will address Plaintiffs' equitable subordination action by separate order.

duciary Action, Contract Action, and Misrepresentation Action against Debtor. Accordingly, it is

**ORDERED** that Plaintiffs' Fiduciary Action, Contract Action, and Misrepresentation Action against Debtor are hereby dismissed.